Así modificado, proveería no ha lugar a la solicitud para dejar sin efecto la misma.

LINCOLN AMERICAN CORPORATION, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE HUMACAO, recurrido.

*Número:* O-77-323     *Resuelto:* 7 de febrero de 1978

*Figueroa & Nassar,* abogados de la recurrente; El Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En el proceso de cancelación de gravámenes posteriores, siguiente a la ejecución de hipoteca y adjudicación a su favor en subasta de una finca rústica de 495 cuerdas frente al Atlántico en Luquillo, la recurrente Lincoln American Corporation obtuvo el 2 de febrero de 1977 de la Corte de Distrito de los Estados Unidos para Puerto Rico, donde se tramitó la ejecución, mandamiento para cancelación de tres gravámenes,

entre ellos una hipoteca en garantía de un pagaré al portador con un principal de $8,660,000.00 constituida según escritura Núm. 67, otorgada en San Juan el 23 de mayo de 1973 ante el Notario Lic. José Antonio Luiña, en el cual se expresa que la suma realmente prestada contra dicha garantía es $1,391,482.03. Luego el 27 de abril de 1977, la recurrente gestionó una segunda orden para cancelación de dicho gravamen posterior, en cuyo párrafo 4° se expone que el crédito garantizado con dicha hipoteca tenía un balance deudor de sólo $1,391,482.03 y que en ningún momento el deudor recibió de su acreedor tenedor del pagaré más dinero que ése. Termina ordenando al Registrador (¹) que proceda a cancelar dicho gravamen tomando como base, no el principal, sino la cantidad mucho menor resultante de la liquidación del crédito. La recurrente presentó esta Orden en el Registro de la Propiedad con un comprobante de $2,759.00 y el Registrador denegó el asiento de presentación por faltar un comprobante de $17,295.00.

La cuestión central planteada por el recurso gubernativo es si ha de cumplirse la orden judicial computando derechos de Arancel sobre la cantidad realmente desembolsada por el acreedor y recibida por el deudor; o si la base ha de ser el principal de $8,660,000.00 de dicha hipoteca. La controversia no puede evadir la regla de *Empire Life Ins. Co.* v. *Registrador*, 105 D.P.R. 136 (1976), que se adhiere al principal de la hipoteca a cancelar como base lógica y real del cómputo.

La hipoteca cuya cancelación se interesa se constituyó por un principal definido y cierto, y por toda la vigencia

---

(¹) Dice así la parte dispositiva de dicha Orden:

"THEREFORE: It is ORDERED by this COURT that the Registrar of the Property of Humacao, Puerto Rico proceed to cancel in the books of record under his charge the particular lien of $8,660,000.00 based on the amount of $1,391,482.03 as the latter constituted the principal amount actually disbursed by the mortgagee under said mortgage note. The amount of $8,660,000.00 does not represent the principal amount disbursed by mortgagee or outstanding at any time under that loan, nor a valid payment obligation in said sum from mortgagor to mortgagee."

de su inscripción el Registro ha estado proveyendo protección de dicho crédito hipotecario por la totalidad que figura en su título, y por su importe total ha quedado restringida la movilidad de la finca en el tráfico comercial, toda vez que esa es la información trasmitida al tercero que contrata sobre el inmueble y la cuantía así publicada es la que restringe el *ius disponendi* del dueño deudor. Si el acreedor tenía a su favor constituida una garantía por $8,660,000.00, que la utilizara hasta el límite o que el dinero prestado al deudor no alcanzara el total garantizado, son hechos irrelevantes al computar el arancel sobre "el valor de la finca o derecho" que según el Art. 18, Ley Hipotecaria (30 L.P.R.A. sec. 43), debe hacerse por lo que resulte de los títulos y de los asientos del Registro con ellos relacionados. *Empire Life Ins. Co.*, supra. El argumento de la recurrente conduciría al resultado absurdo de que la cancelación de esta hipoteca ningún derecho devengaría de obtenerse una orden o resolución judicial declarativa de que en ningún momento se utilizó por el deudor para garantizar cantidad alguna. Al aplicar el Arancel el Registrador debe tomar como base la cantidad que aparezca de la faz, bien del título presentado para su inscripción, bien de los asientos del Registro que con aquél se relacionen, orientando su criterio por la cifra que sea más representativa del verdadero valor de la finca o derecho. Por esta razón, en *Empire Life Ins. Co.*, supra, rechazamos como base impositiva de derechos de arancel el precio de $150,000 pagado en subasta, por el principal de $7,000,000 que figuraba en la escritura de constitución de hipoteca; y aquí hemos de rechazar el resultado de liquidación que arroja un desembolso máximo de $1,391,482.03, por el principal de la escritura de constitución, que es $8,660,000.00.

Siguiendo estos principios y normas determinantes del valor real de la finca o derecho se ha interpretado y aplicado el arancel del Registro de la Propiedad desde su temprana fijación por Ley de 10 de marzo, 1904, pág. 144 hasta la ac-

tual Ley Núm. 91 de 30 de mayo, 1970 (30 L.P.R.A. sec.
1767a). *Balbás* v. *Registrador*, 45 D.P.R. 804 (1933);
*Schlüter* v. *Registrador*, 39 D.P.R. 462 (1929); *Empire Life
Ins. Co.*, supra.

▮▮▮▮ ⸢Celebrada la subasta en que la corporación recu-
rrente fue el único postor, y habiéndosele adjudicado el in-
mueble por el importe de su oferta que fue $6,755,000.00, en
moción *ex parte* para cancelación de este gravamen posterior
de $8,660,000.00 sin que exista constancia en autos de que
informara a la Corte Federal de cuál es la interpretación del
Tribunal Supremo de Puerto Rico respecto a las disposiciones
regulativas de la Ley de Arancel del Registro de la Propiedad
que es la Núm. 91 de 30 de mayo, 1970, Art. 1 (30 L.P.R.A.
sec. 1767a y ss.) la recurrente solicitó y obtuvo una orden
judicial específica al Registrador para que al cancelar la ci-
tada hipoteca tomara como base la cantidad de $1,391,482.03,
balance deudor de la misma y que era todo el dinero adelan-
tado por la acreedora contra la garantía hipotecaria. Dicha
orden es ineficaz, porque estando envuelta una cuestión subs-
tantiva de ley local, en la jurisdicción federal aplica la doc-
trina de *Erie R. Co.* v. *Tompkins*, 304 U.S. 64 (1938), al
efecto de que las decisiones del Tribunal Supremo del estado
son parte de "las leyes de los distintos estados", que a tenor
del Rules of Decision Act (hoy 28 U.S.C. sec. 1652) las
cortes federales deben, en acciones civiles, considerar como
"reglas de decisión . . ." en los casos donde son aplicables;
ratificada la doctrina en *West* v. *American Tel. & Teleg. Co.*,
311 U.S. 223 (1940), y *Fidelity Union Trust Co.* v. *Field*,
311 U.S. 169 (1940). Aun en los casos en que la cuestión de-
cisiva de ley local no ha sido resuelta por el tribunal de ape-
lación final del estado, la Corte Federal se abstiene de inter-
venir con el sistema regulativo estatal, en observancia de la
regla de *Pullman. Railroad Comm'n of Texas* v. *Pullman Co.*,
312 U.S. 496 (1941); *Martin* v. *Creasy*, 360 U.S. 219 (1959);

*Louisiana Power & Light Co.* v. *Thibodaux City*, 360 U.S. 25 (1959).

▪ La recurrente se esfuerza en equiparar la hipoteca de autos constituida en garantía de un pagaré al portador, exigible a la presentación, con la llamada hipoteca de máximo que Roca Sastre define como "la que se constituye por una cantidad máxima, en garantía de créditos *indeterminados en su existencia o cuantía,* que sólo se indican en sus líneas fundamentales, y cuya determinación se efectúa por *medios extra hipotecarios." Derecho Hipotecario,* Tomo IV, 2°, pág. 707, Sexta Ed. (1968). De similar naturaleza es la hipoteca en garantía de obligación futura regulada por los Arts. 142 y 143 (²) de la Ley Hipotecaria (30 L.P.R.A. secs. 255, 256). Aduce que tanto en una como en la otra se requiere una liquidación o determinación de balance deudor antes de proceder a la ejecución. Mas como se ha indicado en la definición, esta operación de contabilidad se efectúa fuera del Registro, bien por acuerdo de las partes o determinación judicial. Si fuéramos a prescindir de las constancias del título y del historial registral de la finca, para buscar el valor base de

---

(²) Art. 142 (30 L.P.R.A. sec. 255)

"La hipoteca constituida para la seguridad de una obligación futura o sujeta a condiciones suspensivas inscritas, surtirá efecto contra tercero desde su inscripción, si la obligación llega a contraerse o la condición a cumplirse.

"Si la obligación asegurada estuviere sujeta a condición resolutoria inscrita, surtirá la hipoteca su efecto en cuanto al tercero hasta que se haga constar en el registro el cumplimiento de la condición."

Art. 143 (30 L.P.R.A. sec. 256)

"Cuando se contraiga la obligación futura o se cumpla la condición suspensiva de que trata el párrafo primero de la sección anterior, deberán los interesados hacerlo constar así por medio de una nota al margen de la inscripción hipotecaria, sin cuyo requisito no podrá aprovechar ni perjudicar a tercero la hipoteca constituida; Disponiéndose que este precepto no será de aplicación a las hipotecas constituidas a favor del Gobierno de los Estados Unidos, del Estado Libre Asociado de Puerto Rico o cualquier otra institución oficial creada por el Congreso de los Estados Unidos o la Legislatura de Puerto Rico.

"De igual modo deberán hacer constar la falta de cumplimiento de la condición o la no celebración de la obligación."

Arancel en pactos y determinaciones hechas en la esfera extraregistral, el Arancel se tornaría inoperante anulado por los resultados, impredecibles para tercero, de ajuste de cuentas entre acreedor y deudor o de la determinación judicial. "Lo importante es saber de qué responde la finca en perjuicio de tercero." Galindo, según citado en *Roig* v. *Registrador de Humacao*, 22 D.P.R. 629, 632 (1915).

*La nota denegatoria recurrida será confirmada.*

El Juez Asociado Señor Rigau no intervino.