OBDULIO CORREA SÁNCHEZ y su esposa ANA HILDA VELÁZQUEZ RIVERA, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE BAYAMÓN, SECCIÓN TERCERA, JORGE MEAUX DÁVILA, recurrido.

*Número:* O-82-504          *Resuelto:* 30 de noviembre de 1982

*Rafael Hernández Matos,* abogado de los recurrentes; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

El presente recurso ilustra la imperiosa necesidad de una verdadera reforma en la Ley de Arancel del Registro de la Propiedad, 30 L.P.R.A. secs. 1767a–1767e, según enmendada, que promulgue y provea normas uniformes que estén libres de ambigüedades y sean de fácil aplicación.

I

Los recurrentes esposos Correa Velázquez cuestionan la calificación del Registrador de la Propiedad de Bayamón, Sección Tercera, que les exige $1,495 de arancel como requisito para la inscripción de un aviso de estar pendiente (*pendente lite*) una demanda expositiva de tres causas de acción que, en lo pertinente, solicita la reivindicación de cuatro (4) fincas inscritas, identificadas con los números 18,323, 3,129, 18,320 y 7,657. Ellos valoraron las primeras tres en $360,000 y la restante en $400,000. La presentación de *lis pendens* se hizo conforme el primer párrafo de la Regla 56.7 de Procedimiento Civil —sucesora del Art. 91

del Código de Enjuiciamiento Civil— el 21 de diciembre de 1981. A esa fecha aún no habíamos decidido *Rocafort* v. *Álvarez*, 112 D.P.R. 563 (1982), en que con carácter prospectivo dejamos sin efecto la forma de pedir anotación de *lis pendens* y remitimos el asunto para regirse por las disposiciones concernientes a la anotación preventiva de demanda según los Arts. 112 y 113 de la Ley Hipotecaria, 30 L.P.R.A. secs. 2401 y 2402.

Con su instancia los demandantes recurrentes acompañaron sendos aranceles por la suma de dos ($2) dólares. El Registrador denegó su anotación al estimar una deficiencia de $1,493 en los derechos a cobrar, basada en la valoración de las fincas. Reiteró su criterio en el escrito de recalificación.

La controversia entre las partes se circunscribe a que determinemos cuál de los dos incisos invocados —el *c* o el *d*— de la Ley de Arancel del Registro de la Propiedad —Ley Núm. 91 de 30 de mayo de 1970— gobierna.([1]) Los recurrentes alegan que es el inciso *d*; el Registrador insiste en que es el *c*.

El Art. 1 dispone en su número dos:

> Por la inscripción, anotación, cancelación, liberación, respecto a cada derecho en una finca, se pagarán los siguientes derechos:
> (a) Si la finca o derecho vale mil (1,000) dólares o menos, se pagará un (1) dólar.
> (b) Cuando el valor de la finca o derecho exceda de mil (1,000) dólares se pagará un (1) dólar por cada mil dólares o fracción de mil dólares del valor nominal de la finca hasta un valor máximo de veinticinco mil dólares.
> (c) Cuando el valor de la finca o derecho exceda de veinticinco mil dólares se pagarán veinticinco (25) dólares por los primeros veinticinco mil dólares y dos (2) dólares por cada mil dólares o fracción de mil dólares adicionales.

---

([1]) La Ley Núm. 3 de 12 de agosto de 1982 la enmendó duplicando el monto de estos aranceles. *Leyes de Puerto Rico*, 1982, pág. 206.

    (d) Por las notas marginales que no envuelvan cuantía se pagará dos (2) dólares por cada una. (30 L.P.R.A. sec. 1767a.)

Las partes coinciden en que la anotación de *lis pendens* se hace mediante nota marginal, criterio correctamente fundado en nuestra decisión de *Velázquez* v. *El Registrador*, 27 D.P.R. 268 (1919). ([2]) Discrepan en cuanto a si un aviso de pleito pendiente envuelve cuantía o no.

Los recurrentes afirman que esa anotación no involucra cuantía, pues sólo tiene el efecto de avisar a terceros que la propiedad afectada por dicha nota marginal está en litigio y que la Regla 56.7 no exige que el aviso exprese cantidad o valor alguno. Invocan también la práctica registral y que se trata de un pleito de reivindicación.

Por su parte el Registrador recurrido señala en su alegato que tal aviso "posee todas las características y conlleva todos los efectos de una anotación preventiva", que es un asiento principal, cuya finalidad es asegurar la rectificación del Registro, puesto que de serle favorable a los demandantes la sentencia que pueda recaer en el pleito implicaría la eliminación registral del derecho inscrito a favor de los demandados.

## II

    La fiel solución de la presente controversia no puede depender de la mecánica o modo empleado por el Registrador al hacer constar el *lis pendens* en los libros del Registro pues, como hemos dicho, el mismo se puede efectuar mediante simple nota marginal, *Velázquez*, supra, o por excepción en virtud de una anotación en el asiento principal. (Véase el escolio 2, *ante*.) Depende más bien de la calificación final registral fundada en un análisis de la verda-

---

([2]) En *Zapata* v. *Registrador*, 40 D.P.R. 564, 565 (1930), reconocimos que también puede practicarse en el mismo lugar de las demás inscripciones por vía de excepción y "curso alternativo cuando no sea factible la nota marginal". (Por ejemplo, cuando no conste inscrita la propiedad.)

dera naturaleza de la demanda incoada, *Banco Central y Economías* v. *Registrador*, 111 D.P.R. 773 (1981); *Kermit Const. Corp.* v. *Registrador*, 103 D.P.R. 583, 588–589 (1975), y del objeto y efectos de la nota o anotación que habrá de realizarse. Esa agenda cubre una breve referencia a los factores que condicionan nuestra decisión, a saber, ciertos principios elementales sobre los atributos científicos de la nota marginal, la trayectoria y el destino jurisprudencial del *lis pendens* en nuestro sistema inmobiliario registral, la práctica cotidiana observada por los registradores en cuanto al arancel y la intención legislativa al respecto.

> Su nombre [nota marginal] expresa su característica formal más notable: el practicarse en lugar distinto del cuerpo del folio registral. . . . Jurídicamente, lo que caracteriza de modo más general a las notas marginales es cierta relación de dependencia con el asiento a cuyo margen se practican. . . . Se comprende, por consiguiente, la imposibilidad de dar una definición suficientemente comprensiva de la nota marginal. . . . J. L. Lacruz Berdejo y F. de A. Sancho Rebullida, *Derecho Inmobiliario Registral*, Barcelona, Ed. Bosch, 1968, pág. 282.

Roca Sastre "es el primer hipotecarista que da una definición completa y no formalista". Ramón de la Rica y Maritorena, *La Nota Marginal*, 49 Rev. Crítica de Derecho Inmobiliario 1086, 1090 (1973). La define como "un *asiento registral*, en general *accesorio, definitivo* y *positivo* que se extiende *al margen* de otros asientos, y cuyo objeto es consignar un *hecho* que modifica un derecho registrado o *hacer las veces* de una inscripción, anotación preventiva o cancelación, o facilitar la *mecánica de la oficina* del Registro". (Énfasis en el original.) *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. II, pág. 914. De esta definición, esbozada esencialmente en lo que José M. Chico y Ortiz llama "por acumulación de esas finalidades" en *Teoría, Práctica y Fórmula de la Calificación Registral*, Madrid, Ed. Marcial Pons, 1977, pág. 448; esto es, atendiendo al

criterio de su objetivo o propósito, Roca Sastre analiza y divide en tres las notas marginales: de oficina, de modificación jurídica y la sucedánea. Aunque se señala lo difícil que es deslindar el campo entre las diversas clases, se intenta sistematizarlas con arreglo a los siguientes criterios: asientos a que se refiere; según los textos legales; por su naturaleza; su origen; su duración; y su extensión. R. de la Rica, *op. cit.*, págs. 1095–1097. A base de las peculiaridades que entraña, inequívocamente puede concluirse que la nota marginal correspondiente al *lis pendens* no es susceptible de clasificarse como una "de oficina", cuya misión es "puramente mecánica o material: relacionar entre sí los asientos que guardan cierta conexión". Máxime cuando "son asientos o notas de efectuación obligada o de oficio, o sea, que su práctica no es rogada, ya que los extiende al Registrador por imposición reglamentaria". Roca Sastre, *op. cit.*, pág. 915. Tampoco podría catalogarse bajo las denominadas notas marginales "de modificación jurídica", ya que no consigna de modo permanente "hechos o circunstancias que alteran la situación jurídica registrada". Aunque la figura proyecta ciertos perfiles parecidos a una "nota marginal sucedánea", (3) preciso es admitir que no acopla en ninguna de éstas por su origen extra-hipotecario y naturaleza sui géneris producto de su génesis procesal angloamericana. *Cruz La Corte* v. *Registrador*, 109 D.P.R. 354, 356 (1980).

En el aspecto histórico y estatutario arancelario toda nota marginal devengaba derechos uniformes sin referencia a distinción de cuantía alguna. Es comprensible, pues, que

---

(3) Roca Sastre describe la "nota marginal sucedánea" como aquella "con función semejante o equivalente a la de los asientos de inscripción, *anotación preventiva* o cancelación. Son verdaderas inscripciones, anotaciones o cancelaciones que, *por disposición de preceptos hasta cierto punto excepcionales* y por razones de simplificación de las operaciones de registro, han de adoptar la forma de nota marginal.

"Dada su equivalencia a tales asientos principales, tienen naturalmente el valor y características de surtir los efectos que son propios de tales asientos de inscripción, anotación preventiva o cancelación." (Énfasis suplido). *Derecho Hipotecario*, 1979, T. II, pág. 917.

habiendo resuelto este Tribunal en *Velázquez*, ante, que la mejor práctica de darle al *lis pendens* acceso al Registro era mediante simple nota marginal, prevaleciera la costumbre de exigir el arancel concernido sin atender el valor real o estimado de la finca sobre la cual se anotaba. Tal situación es entendible solamente bajo la legislación arancelaria anterior que no distinguía cuantías a base de valor del derecho implicado en la nota marginal. No obstante, la legislación de 1970 vigente, con rúbrica de reforma, alteró significativamente ese esquema de tributación registral al inyectar un elemento valorativo y disponer taxativamente que sólo las notas marginales que no envolviesen cuantía se aprovecharían del insignificante arancel de dos dólares. *Diario de Sesiones*, Vol. 24, Parte III, pág. 1182 (1970). Al así hacerlo la Asamblea Legislativa ejerció la prerrogativa de establecer el costo por los servicios, garantías y protecciones que brinda el Registro, nada de lo cual es odioso ni ofende preceptos constitucionales. Si se observa el vertiginoso ascenso del crédito hipotecario para facilitar la adquisición de viviendas y locales de comercio en lustros recientes, fácil es advertir el ingente incremento en los pleitos de ejecución y también de aquellos concomitantes al tráfico inmobiliario con consecuencia registral. Así pues, no podemos concurrir con la tesis de los recurrentes de que la enmienda de 1970 al inciso *d* fue inconsecuente en cuanto al modo de computar el arancel.

Sin embargo, cabe notar que esa legislación no dispuso expresamente qué tratamiento arancelario se le brindaría a una anotación bajo el entonces Art. 91, luego Regla 56.7, de génesis distinta. El resultado ha sido una desarticulación en la implementación de la ley en que subsisten diversas interpretaciones como si rigiesen varios estatutos. A tal efecto, los argumentos de las partes reconocen que la práctica varía de sección en sección, aun dentro de un mismo Registro de determinada demarcación territorial. En algunos basta el arancel de dos dólares; en otros se le aplica si la

demanda es de reivindicación y no menciona valor del inmueble (después de prevalecer el anotante es que se cobra); y en otros —como el que nos ocupa— se exige en la primera oportunidad, a base del valor de la finca a la luz del documento de demanda que acompaña el aviso.

A pesar de las diferencias que habíamos reconocido entre la anotación de *lis pendens* provista en el Art. 91 del Código de Enjuiciamiento Civil —hoy Regla 56.7 de Procedimiento Civil— y la anotación preventiva de demanda del antiguo Art. 42 —hoy Art. 112— de la Ley Hipotecaria —*Martínez* v. *Registrador*, 101 D.P.R. 308, 311 (1973), y *Padilla* v. *Registrador*, 39 D.P.R. 532, 539 (1929)— es innegable que ambos mecanismos, a través de la publicidad, convergen en el propósito común de sujetar la propiedad en cuestión a la suerte que corra el pleito entablado, colocando a cualquiera que adquiera el dominio o cualquier derecho real sobre la finca en litigio en la posición de un adquirente *pendente lite*. *Hernández* v. *Registrador*, 67 D.P.R. 452, 453 (1947). Subsiste aún como diferencia esencial, que el *lis pendens* no puede convertirse en asiento definitivo de inscripción. *Martínez*, supra, pág. 312; *Padilla*, supra, pág. 541. Esta disimilitud, ¿afecta y es determinante? Concluimos que no. El propósito legislativo es que el arancel se cobre por la seguridad y los beneficios a terceros que ofrece el Registro de la Propiedad. Aunque no se ha logrado, también aspira a la uniformidad.

La protección de un *lis pendens* se materializa desde el momento en que se anote, aunque sus efectos sustantivos permanentes, modificativos del asiento principal, se alcanzan solamente cuando cesa de ser provisional y el anotante recibe la completa protección dimanante del Registro al emerger victorioso, final y firme, de la causa judicial que lo motiva. Como medida cautelar de aseguramiento de sentencia, reduce el *ius disponendi* de los demandados. *Maldonado Cruz* v. *Registrador*, 107 D.P.R. 71, 75 (1978). En este sentido se asemeja a la caución registral que produce el

embargo de inmuebles con la sola diferencia de que este remedio exige de ordinario prestación de fianza y no requiere relación alguna entre la causa de acción ejercitada y la propiedad objeto del embargo. *Velázquez*, supra. Así, el que embarga bienes raíces, además de prestar fianza para obtener el mandamiento, tiene que satisfacer el arancel del Registro a base del importe del embargo, pues ésta es la medida o el valor del derecho que se inscribe y asegura. *Rosario* v. *Registrador*, 57 D.P.R. 604 (1940). Igualmente, quien obtiene mandamiento judicial de anotación preventiva de demanda que reclame la propiedad del inmueble en juicio, antes Art. 42(1), hoy Art. 112(1) de la Ley Hipotecaria, tiene que cancelar los aranceles según la escala del estatuto en cuestión.

La anotación preventiva de demanda apercibe a terceros de que el título del inmueble afectado está adscrito a la contingencia de un pleito en desarrollo. El anotante recibe, pues, la protección del Registro en cuanto a la totalidad de la finca, pues de prevalecer en el pleito, dicha anotación preventiva puede convertirse, sujeta a ciertos requisitos, en asiento definitivo de inscripción a su favor. Es como si el demandante tuviese "embargada" la totalidad de la finca. No afecta la cuestión que el aviso de *lis pendens* no pueda convertirse en asiento definitivo. La protección *pro tempore* que ofrece se extiende a toda la finca, por lo que, de prevalecer el demandante en pleito, podría privar a cualquier adquirente posterior de su derecho inscrito.

## III

A la luz de las características de una anotación de aviso de pleito, tanto a nivel conceptual como en la protección y efectos que genera, no existe impedimento para que demos virtualidad al propósito legislativo de que la tributación sea a base del valor del inmueble, aunque dicha anotación se realice mediante nota marginal. Desde que se aprobó la Ley de Arancel de 1963, el legislador hizo claro

que al estimar el arancel aplicable "[n]o se le dará importancia al trabajo mecánico de hacer un asiento de mayor o menor extensión, sino que se *cobrarán los derechos por la garantía que, en beneficio de terceros*, brinda esta operación en el Registro de la Propiedad". Citado en *Díaz* v. *Registrador*, 107 D.P.R. 233, 238 (1978). Nada hay de irrazonable en imponer el pago de derechos a base del valor de la finca objeto de la anotación de *lis pendens*, ya que, aunque provisionalmente, el anotante recibe la completa protección dimanante del Registro mientras pende la causa judicial que la motiva. Siguiendo ese razonamiento, la calidad de la garantía registral en uno y otro caso es única; las consecuencias básicamente son las mismas. A tal efecto, no hay diferencia sustancial en cuanto a la protección temporal que al anotante brinda el Registro en cualesquiera de los casos.

El lenguaje crucial legislativo en la redacción del estatuto está estructurado sobre la base de imponer y cobrar, como regla general, un arancel sobre "el valor de la finca o derecho". Esa premisa se extiende a las notas marginales. Es por excepción que a éstas aplica la exigua cantidad de $2 cuando no hay cuantía envuelta. Aquí la hay.

La demanda de reivindicación de un inmueble, autorizada en el Art. 280 del Código Civil, que *in fine* reza, "[e]l propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla", 31 L.P.R.A. sec. 1111, "persigue: 1.°, que sea declarado el derecho de propiedad de quien la interpone; 2.°, que, en consecuencia, le sea restituida la *cosa* sobre que aquél recae". M. Albaladejo, *Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1976, T. III, Vol. 1, pág. 345. Puig Brutau destaca "que *sólo procede para reclamar una cosa señalada, concreta y determinada*, y precisamente de quien la tenga en su poder, y que no permite pedir otra de la misma especie y calidad". *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1971, T. III, Vol. I, pág. 211. Como es natural, cuando el objeto de la *litis* es un inmueble, éste posee intrínsecamente un valor en el mercado, que por

su grado de utilidad, cualidades y significado puede precisarse en función de factores tales como su ubicación, clasificación gubernamental, facilidades y grado de desarrollo, tipo de terreno, accesibilidad y otros. Ese inmueble, denominado finca, en unión a la persona y al derecho, representan los tres elementos auténticos constitutivos de la relación jurídica inmobiliaria. Y el "Registro de la Propiedad se llevará tomando la finca como unidad registral y destinando a cada inmueble un folio particular. . . ." Art. 32 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2152.

Nuestra decisión no puede, pues, ignorar los principios fundamentales apuntados, como tampoco puede hacerse depender ésta de que un demandante en reivindicación mencione o no en la demanda o en el aviso el valor de la finca que reclama. La fragilidad del argumento es evidente: la sola circunstancia de la fácil evasión. Más bien debe responder "al propósito [moderno e irreversible] que infiltra el arancel de aproximar en lo posible la base impositiva al valor real del derecho objeto de la operación registral". *Empire Life Ins. Co.* v. *Registrador*, 105 D.P.R. 136, 140 (1976), seguido en *Aponte Parés* v. *Registrador*, 106 D.P.R. 176 (1977), y *Lincoln American Corp.* v. *Registrador*, 106 D.P.R. 781 (1978). Bajo esta hipótesis, lo determinante es identificar el derecho en cuestión y si puede ser valorado independientemente de la voluntad de las partes o del anotante.

En la consecución e implementación de ese fin ecuable, resolvemos que cuando la nota marginal tenga por objeto un derecho o interés estimable, susceptible de así ser justipreciado —al momento de su presentación o cancelación— estamos ante una nota marginal que realmente "envuelve cuantía". En tal caso, no tiene importancia el que las partes lo hayan valorado o no, o que el pleito sea de reivindicación. La obligación del Registrador es exigir el pago

de arancel correspondiente, siguiendo las normas aplicables en la ley. (⁴)

■ Finalmente, además de los fundamentos jurídicos esbozados, razones prácticas y de justicia abonan a la conclusión de que el arancel en notas marginales *pendente lite*, y aquellas análogas, es exigible al tiempo de presentarse la solicitud. Repetimos, es a partir de ese momento y de manera inmediata que tiene efectos registrales publicitarios frente a terceros. (⁵) Posponer su imposición a los resultados del pleito —de ser negativo al anotante— implicará razonablemente: (a) que éste perdió en esa etapa su interés, lo cual dificultará que espontáneamente o de buen grado satisfaga el arancel; (b) que recaerá sobre el demandado victorioso dueño de la finca inscrita el diligenciar su cancelación; y (c) que es posible que en esa gestión el anotante tenga que satisfacer el arancel y demás gastos, y sufrir inmerecidamente su impacto fiscal.

*Se dictará sentencia que confirme la calificación del Registrador.*

El Juez Asociado Señor Dávila no intervino.

---

(⁴) La determinación del valor que debe servir de base para el arancel de la anotación preventiva de demanda será el que el Registrador en cada instancia determine en el ejercicio de su función calificadora, la cual es inherente al ejercicio de su cargo. El Registrador hará la determinación cuantitativa del arancel a base de las normas dispuestas en el Art. 2 de la Ley Núm. 91 de 30 de mayo de 1970, según enmendada, 30 L.P.R.A. sec. 1767(b), y nuestras decisiones en *Empire Life Ins. Co.* v. *Registrador*, 105 D.P.R. 136 (1976); *Aponte Parés* v. *Registrador*, 106 D.P.R. 176 (1977); y *Lincoln American Corp.* v. *Registrador*, 106 D.P.R. 781 (1978). Esta jurisprudencia no deja al azar ni a la voluntad de las partes la valoración del derecho objeto de inscripción.

(⁵) Nos abstendremos de discutir, por no ser pertinentes al recurso, los argumentos de los recurrentes en cuanto a los efectos jurídicos y frente a terceros de una escritura constitutiva de hipoteca sobre los cuatro solares en litigio —en garantía de pagarés al portador— suscrita por los codemandados José R. Fournier y su esposa Ercilia Torres, el 1 de marzo de 1982 y presentada al Registro el 2 de marzo.