EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| ESJ Towers, Inc. Recurrente v. Hon. Demetrio Torre Rada, Registrador de la Propiedad, Seccion Primera de Carolina Recurrido | Recurso Gubernativo 2000 TSPR 26 |

Número del Caso: RG-1997-0002

Fecha: 15/02/2000

Abogados de la Parte Peticionaria: Lcdo. José Luis Novas Dueño

Registrador de la Propiedad: Lcdo. Demetrio Torre Rada

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

ESJ Towers, Inc.

    Recurrente

      v.                            RG-97-2      Recurso Gubernativo

Honorable Demetrio Torre Rada
Registrador de la Propiedad,
Sección Primera de Carolina

    Recurrido

Opinión del Tribunal emitida por el Juez Presidente señor Andréu García

San Juan, Puerto Rico a 15 de febrero de 2000

El presente recurso nos brinda la oportunidad de ampliar nuestra interpretación de la Ley de Aranceles del Registro de la Propiedad y nos permite resolver cuál es el monto de los aranceles a pagarse por la cancelación del asiento registral de una hipoteca que ha quedado extinguida por disposición de ley.

La parte interesada y recurrente ESJ TOWERS, INC. acude ante nos inconforme con la calificación final fechada el 5 de noviembre de 1997 y emitida por el Registrador de la Propiedad, Sección I de Carolina, Hon. Demetrio Torre Rada.  Nos pide que dilucidemos "cuál es el verdadero valor de los derechos de hipoteca cuya cancelación se interesa, para determinar, [a]

base [de] dicho verdadero valor, la cuantía del arancel que debe pagar la peticionaria por la cancelación de los mismos en los libros del registro".

                                    I.

La recurrente, ESJ TOWERS, tiene inscrita a su favor una finca en propiedad en la Sección I del Registro de la Propiedad de Carolina. Dicho inmueble aparece gravado por dos hipotecas que tienen más de veinte (20) años de constituidas. No hay controversia en cuanto a que dichos derechos hipotecarios no han sido prorrogados ni han sido objeto de acciones para su ejecución o para el cobro de las obligaciones que garantizan. Una de dichas obligaciones es por la suma de quinientos mil dólares ($500,000.00) de principal, y la otra por la suma de quince millones de dólares ($15,000,000.00) de principal, ambas con tasa de interés al ocho porciento (8%) anual. Dichas deudas están evidenciadas por sendos pagarés a la orden del portador, y vencederos a la presentación.

El 18 de noviembre de 1994, ESJ TOWERS, INC., presentó una Instancia ante el Registrador recurrido solicitándole se cancelaran los gravámenes hipotecarios descritos anteriormente, a tenor con lo que ordena el Art. 145 de la Ley Hipotecaria, infra. Con la Instancia, la Recurrente acompañó dos dólares ($2.00) por cada derecho a ser cancelado, más los derechos de presentación y pago correspondiente.[1]

El 2 de octubre de 1997 el Registrador de la Propiedad calificó la Instancia presentada, denegando la inscripción de la misma por que no se acompañó la cantidad de $61,900.00 en derechos. Entiende el Registrador que aplica el Apartado (c) del Arancel Número Dos del Art. 1 de la Ley de Aranceles del Registro de la Propiedad, supra. ESJ TOWERS estima que dicho Apartado no es de aplicación a un derecho extinguido por ley, en este caso un derecho de hipoteca, por lo que recurre ante nos mediante el

---

[1] Esto así porque la recurrente entendía le era de aplicación el Inciso (a), Arancel Número Dos, del Art. 1 de la Ley de Aranceles del Registro de la Propiedad, Ley Núm. 91 de 30 de mayo de 1970, según enmendada, 30 L.P.R.A. § 1767(a).

presente Recurso Gubernativo. Considerados y examinados los alegatos de ambas partes, discrepamos del criterio del Registrador y modificamos la calificación recurrida.

## II.

Precisando conceptos, y para entender a cabalidad cuál es el alcance de la operación objeto de controversia, se hace necesario distinguir la extinción de la hipoteca de su cancelación. En la extinción, desaparece la hipoteca con todos sus efectos, lo que está en juego es la hipoteca misma, tanto en relación a las partes como a terceros. En la cancelación, por su parte, lo que se extingue es la inscripción de la hipoteca en el Registro, por lo que sólo se afectan los efectos de la hipoteca con relación a terceros. Véase, Guillermo A. Borda, Tratado de Derecho Civil, V. III, t. II, Buenos Aires, 1975, Ed. Perrot, a las págs. 334-35.

Los asientos del Registro pierden total o parcialmente su fuerza al caducar o al ser sustituidos -en todo o en parte- por otros. La mayoría de las veces da a conocer el advenimiento de un distinto titular. Otras, explica el verdadero tenor de una inscripción. En ocasiones, el asiento está dedicado exclusivamente a una negación del anterior contenido del Registro: a dar cuenta de que algo o todo de ese contenido no debe ser tenido en cuenta en adelante. Lacruz Berdejo y Sancho Rebudilla, Derecho Inmobiliario Registral, Bosch, Barcelona, 1968, a la pág. 286.

Explica Lacruz Berdejo, sin embargo, que sería erróneo considerar la cancelación, en el Derecho español, como una simple inscripción negativa. Su regulación difiere bastante de la de las inscripciones: en parte, porque su materia es más reducida, ya que se limita al campo de la extinción de los derechos (por tanto, sobre todo, de los derechos reales limitados) **y la de sus asientos**. Id.

La inscripción de contenido negativo presupone, por su propio concepto, derechos inscritos: no se puede cancelar lo que no existe registralmente. Es por ello que una cancelación no podría ser nunca una primera inscripción. Presupone, en vista de lo anterior, un contenido

positivo al que pueda dejar sin valor. Es decir, **la extinción de los derechos es constatada en el Registro mediante la cancelación de sus correspondientes asientos**. Id. a la pág. 288. El razonamiento nos muestra, con meridiana claridad, que la extinción acontece **fuera del Registro** y que mediante la cancelación se adecua la realidad extrarregistral –lo que en efecto ya ha ocurrido– con lo que publica el Registro.

Insiste Lacruz Berdejo en que la cancelación, en general, no tiene específicos efectos defensivos. Su existencia no agrava la situación del titular del derecho que se presume extinto. Las cosas suceden **como si no existieran, ni el asiento cancelado, ni el asiento cancelatorio**: se presume que el derecho cancelado no existe ya, en la misma relativa medida en que se presumen que no existen los derechos no inscritos. Id. a la pág. 294.

De otro lado, **la extinción del derecho inscrito surte efectos entre las partes desde el momento en que el derecho muere o desaparece**; pero respecto a terceros sólo produce efecto la extinción **desde que se anula o cancela el asiento** en donde se hizo constar el derecho en el Registro de la Propiedad. Es por ello que las inscripciones no se extinguen, en cuanto a tercero, sino por su cancelación o por la inscripción de la transferencia del dominio o derecho real inscrito a favor de otra persona.

Puede decirse entonces, de acuerdo con el Art. 127 de la Ley Hipotecaria, 30 L.P.R.A., § 2451, que **la cancelación extingue el asiento, pero no el derecho**. Es por ello que el Art. 128 del citado cuerpo legal, 30 L.P.R.A. § 2452, declara que cancelado un asiento, se presume extinguido el derecho contenido en éste desde el momento de su extinción. Sobre el particular, se ha dicho que esta presunción, entre partes, es juris tantum, y frente a tercero, juris et de jure. Puede haber ocasiones en que el derecho no se haya extinguido en la realidad, como el caso de una escritura nula, pero la cancelación a base de dicha escritura es perfectamente eficaz para que el tercero registral no tenga que

responder del derecho que reflejaba el asiento cancelado. Carmelo Díaz González, Iniciación a los estudios de Derecho Hipotecario, t. II, Editorial Revista de Derecho Privado, Madrid, 1967, a las págs. 337-347.

En cuanto al Art. 130 de nuestra Ley Hipotecaria, 30 L.P.R.A. § 2454, notamos que, en su inciso 2do, dispone la cancelación total de los asientos en el Registro cuando se extinga por completo el derecho registrado.

Así, el Art. 132 de la citada Ley, 30 L.P.R.A. § 2456, dispone que "las inscripciones, anotaciones preventivas, y notas hechas en virtud de escritura o documento auténtico, se cancelarán mediante otra escritura o documento de la misma naturaleza, en que exprese su consentimiento el titular a cuyo favor se hubiere hecho el asiento...".

No obstante ello, el Art. 134 de la Ley Hipotecaria, 30 L.P.R.A. § 2458, manda, inter alia, que **cuando por declaración de ley o por resultar del título que produjo el asiento, quedare extinguido el derecho contenido en una inscripción, anotación preventiva o nota, se cancelará el respectivo asiento a instancia de parte interesada, sin exigirse los requisitos fijados en el Art. 132 de esta ley,** supra. Es decir, no hará falta cumplir con los requisitos que menciona el citado artículo para las cancelaciones ordinarias.

Por su parte, y concomitante con lo anterior, el Art. 145 de la Ley Hipotecaria, 30 L.P.R.A. § 2469, ordena lo siguiente:

> A petición de parte, autenticada ante notario, **los registradores cancelarán las hipotecas que tengan más de veinte años de vencidas o, si no tuvieron término de vencimiento, de constituidas,** siempre que concurran las circunstancias siguientes:
>
> (1) Que del Registro no conste la interposición de demanda o procedimiento alguno en cobro o ejecución del gravamen hipotecario.
>
> (2) Que del Registro tampoco conste que a pesar del tiempo transcurrido, dicho gravamen se mantiene subsistente en virtud de cualquier reclamación, acto o reconocimiento que signifique la subsistencia de la hipoteca, por suspensión o interrupción de la prescripción liberatoria, u otra causa cualquiera.

Queda claro, entonces, la diferencia que reconoce la ley en cuanto a las cancelaciones ordinarias –en las que el Registrador viene obligado a realizar un trámite calificador–[2] y luego publica un hecho nuevo, frente a este tipo de cancelación, que surge por virtud de lo que ya consta en el propio Registro y a la que viene obligado luego de verificar que se cumplan los requisitos enumerados en el artículo.

En cuanto a esta prescripción de veinte años, si integramos, notamos que la misma contradice la prescripción de obligaciones puramente personales –que en última instancia son las que garantizan la hipoteca–, de acuerdo con el Art. 1864 del Código Civil, 31 L.P.R.A. § 5294, que es sólo de quince años. Esta disposición de nuestro Código Civil, por su parte, complementa el mandato de la Ley Hipotecaria en su Art. 145, supra, al disponer también que la acción hipotecaria prescribirá a los veinte años y que las personales que no tengan señalado término especial de prescripción, a los quince.

Como bien se ha señalado, dado que no es posible admitir un plazo distinto de prescripción del crédito y de la garantía, debe entenderse que los créditos garantizados con hipoteca no prescriben a los quince años, sino a los veinte, aunque en tal supuesto se da la anomalía de que lo accesorio influye sobre lo principal. Carmelo Díaz González, Iniciación a los estudios de Derecho Hipotecario, t. III, Ed. Revista de Derecho Privado, Madrid, 1967, a la pág. 307.

Relacionado, señala Roca Sastre, Derecho Hipotecario, 8va ed., t. II, Bosch, Barcelona, 1995, a la pág. 600, que en materia de derechos reales no susceptibles de posesión o de protección posesoria, su prescripción extintiva no perjudicará nunca al tercer adquirente. Esto equivale a establecer la imprescriptibilidad en cuanto a tercero del

---

[2] Sobre la función calificadora del Registrador, en cuanto persigue únicamente extender o denegar la inscripción, anotación, nota o **cancelación** de los documentos presentados ante la consideración de este funcionario administrativo, de acuerdo con el Art. 67 de la Ley Hipotecaria, 30 L.P.R.A. § 2270, véase Rodríguez Morales y otros v. Registrador, res. el 29 de enero de 1997, 142 D.P.R. ___ (1997); U.S.I. Properties, Inc. v. Registrador, 124 D.P.R. 448 (1989); L.Dershowitz & Co., Inc. v. Registrador, 105 D.P.R. 267 (1976).

derecho real de hipoteca.  Ello resalta la importancia de la cancelación de asientos registrales.

José María Chico y Ortiz discute ampliamente la doctrina de cancelación en el Derecho español.  Así, cita a Díez Picazo, junto a Lacruz Berdejo, sosteniendo la idea de que los asientos registrales no se extinguen, sino que son sustituidos o pierden vigencia a través de la extensión de un nuevo asiento.

Continúa la discusión citando la doctrina tradicional, compuesta por, entre otros, Morrell y Terry, Galindo y Escosura, Campuzano, Casso, Roca Sastre, quienes entienden la cancelación es un asiento accesorio y definitivo, por el que se extingue un asiento anterior y a consecuencia del cual se presume extinguido el derecho a que se refería el asiento cancelado.

La doctrina más moderna, representada por La Rica Maritorena, coincide en que el asiento de cancelación deja sin efecto otro asiento principal, bien por extinción del derecho inscrito o anotado, bien por otra causa legal que taxativamente lo determine.  José María Chico y Ortiz, Estudios sobre Derecho Hipotecario, t. II, 3ra ed., Marcial Pons, Madrid, 1994, a las págs. 1215-1219.

Por su parte, Sánchez Cañete define la cancelación como los "asientos principales, que recogiendo una decisión solemne dada por funcionario competente para ello, de que **se ha producido una situación jurídica o de hecho extintiva** de alguno de los elementos que constituyen el folio registral o de un asiento de él, excluye cualquier otro que presuponga la vigencia de lo extinguido".  Buenaventura Camy Sánchez Cañete, Comentarios a la Legislación Hipotecaria, Vol. VI, 3ra ed., Aranzadi, 1983, a la pág. 325 (énfasis nuestro). Seguidamente, sintetiza lo dicho describiendo la cancelación como "asientos que **declaran la extinción** de todos o algunos de los elementos formantes de otros, impidiendo la registración de todo lo que pueda desconocerla".  Id. (énfasis nuestro).

Concretamente hablando de la cancelación de hipoteca, Sánchez Cañete nos enseña:

> La sugestiva pero equivocada idea, de que la hipoteca es ante todo un derecho real, con la secuela de que al extinguirlo realizamos una operación equivalente a su enajenación, ha hecho olvidar que **el carácter esencial de la hipoteca y el que justifica su existencia, no es otro que el de ser en todo y por todo un derecho real accesorio de una obligación personal**, que en modo alguno podrá recoger el Registro sólo como tal obligación personal.
>
> Esta accesoriedad informa de tal manera al derecho real, que **desaparecida la obligación principal queda inoperante aquél, conservándose sólo a lo sumo una entelequia, el asiento registral que lo recoge.** Sánchez Cañete, op. cit., a la pág. 766. (énfasis nuestro). Véase, además, Roca Sastre, Derecho Hipotecario, 8va ed., t. III, Bosch, 1995, a las págs. 133 y 174.

Dicho de otro modo, si la inscripción se cancela, la hipoteca se extingue, porque la supresión de la publicidad aniquila el derecho real; sostener lo contrario equivaldría a admitir la existencia de hipotecas ocultas. Jorge Gamarra, Tratado de Derecho Civil Uruguayo, T. II, 3ra ed., Montevideo, 1982, a la pág. 339.

El profesor y tratadista Eduardo Vázquez Bote nos aclara el ámbito de la cancelación en el derecho puertorriqueño. Así, nos dice:

> En sistemas registrales como el de Puerto Rico, en que los derechos reales nacen fuera del Registro (con la consabida excepción del derecho real de hipoteca), ya es conocido que puede producirse una dualidad entre el contenido registral y el mundo extratabular. **Y del mismo modo que la inscripción no se identifica con la constitución o modificación de un derecho, sino que es un acto posterior, lo mismo ocurre con la cancelación, la cual no puede ni debe ser confundida con la causa que extingue el derecho contenido en el asiento que aquélla declara, a su vez, igualmente extinto.**
>
> La cancelación deviene, pues, en ser expresión registral de la presencia de causas extintivas de un asiento o de un derecho. Pero la cancelación, en cuanto expresión formal, no puede identificarse con la variedad y abundancia de causas –factor sustancial– que provocan la extinción de un derecho y que viven, normalmente, fuera del Registro; ni tampoco puede identificarse con las causas que, surgidas del Registro, provoquen la ineficacia de un asiento. Eduardo Vázquez Bote, Derecho Privado Puertorriqueño, Vol. XV, Derecho Inmobiliario Registral (II), 1992, a la pág. 566. (énfasis nuestro.)

Bien sabemos, por reiterar, que la cancelación en términos generales no es si no una inscripción de la extinción de un derecho real. Véase

Don Jacinto Texidor y Alcalá del Olmo, <u>Extinción de Inscripciones y Anotaciones</u>, 1 Rev. Jur. U.P.R. 3, 28 (1932).

III.

En cuanto a los aranceles que deben ser satisfechos al momento de realizar una cancelación, ya sea mediante nota marginal o mediante asiento de cancelación, el Art. 1 de la Ley de Aranceles del Registro de la Propiedad, <u>supra</u>, fija los derechos que se han de pagar por las inscripciones, anotaciones, cancelaciones, o liberaciones en el Registro de la Propiedad. Nos atañe, de forma particular, lo que dispone el arancel número dos:

> Por la inscripción, anotación, cancelación, liberación, respecto a cada derecho en una finca, se pagarán los siguientes derechos:
>
> (a) Si la finca o derecho vale mil (1,000) dólares o menos, se pagará dos (2) dólares.
>
> (b) Cuando el valor de la finca o derecho exceda de mil (1,000) dólares se pagará dos (2) dólares por cada mil dólares o fracción de mil dólares de valor nominal de la finca hasta un valor máximo de veinticinco mil (25,000) dólares.
>
> (c) Cuando el valor de una finca o derecho exceda de veinticinco mil (25,000) dólares, se pagarán cincuenta (50) dólares por los primeros veinticinco mil (25,000) dólares y cuatro (4) dólares por cada mil (1,000) dólares o fracción de mil (1,000) dólares adicionales.
>
> (d) **Por las notas marginales que no envuelvan cuantía se pagará cuatro (4) dólares por cada una.**
>
> (e) Por liberaciones gratuitas se pagarán cuatro (4) dólares por cada finca.
>
> (f) Los derechos por la anotación de la reserva de prioridad de un contrato en gestación se regirán por el anterior inciso (a) o (b), pero limitados a un máximo de veinticinco (25) dólares.
>
> (g) Los derechos por la inscripción del contrato de opción de compra se regirán por el anterior inciso (a) o (b) sobre el monto del precio señalado para la compra, pero limitado a un máximo de veinticinco (25) dólares. (énfasis nuestro).

Nuestra jurisprudencia ha tenido ocasión de discutir asuntos con tangencia al caso que nos ocupa. Así, en S.B. Pharmco v. Registrador, res. el 18 de mayo de 1999, 99 TSPR 77, nos enfrentamos a una situación en la que un contrato de arrendamiento vencido, por haber expirado, interesaba ser cancelado en el Registro. El Registrador denegó la calificación solicitada alegando insuficiencia en el pago de aranceles. Citando a Correa Sánchez v. Registrador, 113 D.P.R. 581, 590 (1983), dijimos que el valor del arancel registral requerido para la inscripción o cancelación de cualquier asiento, ya sea principal o accesorio, queda establecido en virtud del valor de la finca o derecho a inscribirse o a cancelarse. Cuando se tiene por objeto un derecho o interés estimable – añadimos–, susceptible así de ser justipreciado, bien al presentarse o cancelarse, nos encontramos ante un acto que envuelve cuantía. Correa Sánchez v. Registrador, supra, a las págs. 591–92.

Aclarando aún más, en S.B. Pharmco v. Registrador, supra, elaboramos sobre lo resuelto en Correa Sánchez v. Registrador, supra, expresando que *la operación registral que pretende cancelar un derecho inscrito, que por sus propios términos y según surge de la inscripción del mismo ya ha vencido,* **según ordena el Artículo 134 de la Ley Hipotecaria,** *supra, no puede envolver cuantía ni tiene por objeto un derecho o interés estimable. Como consecuencia, la inscripción de dicho asiento de cancelación sólo deberá satisfacer el tipo mínimo de cuatro dólares ($4.00) que contempla el Art. 1 de la Ley de Aranceles, supra.*

En S.B. Pharmco teníamos ante nuestra consideración un contrato de arrendamiento vencido, cosa que se desprendía de sus mismos términos. De acuerdo con el Art. 134 de la Ley Hipotecaria, supra, en estas circunstancias el Registrador viene obligado a cancelar, a instancia de parte, sin tener que realizar las funciones calificadoras que tendría que hacer de ordinario en una cancelación. En el caso particular atendido allí, la propia ley eximía al Registrador, para la eliminación de tal inscripción, del procedimiento ordinario antes dicho. En función de lo anterior, resolvimos que en esas circunstancias particulares, el arancel

que procedía era el de tipo mínimo, en vista de que la propia letra de la ley lo distinguía del procedimiento típico de cancelación.

La solución del caso ante nuestra consideración no puede escapar lo resuelto en S. B. Pharmco y en Correa Sánchez. Se trata de un crédito hipotecario que, habiendo transcurrido más de veinte años, **se ha extinguido por mandato de ley. Esta operación registral no puede envolver cuantía,** como tampoco el derecho a cancelar puede ser estimado. Igual que un documento que de sus propios términos destila su vencimiento, tenemos ante nos un derecho extinguido por declaración expresa de ley, según surge del Art. 134 de la Ley Hipotecaria, supra, que consta así en la publicación que de él hace el Registro y que también es eximido del rigor del procedimiento ordinario de cancelación. Es decir, el Registro no tiene que publicar un hecho nuevo. Además, el Art. 145 de dicha ley, supra, ordena específicamente a los Registradores que, a instancia de parte, y verificados los criterios que allí se exponen, elimine la inscripción una vez transcurrido el término mencionado. Esta obligación del Registrador lo exime de ulterior trámite, a diferencia de lo que acontece con las cancelaciones ordinarias, en las que incluso estaría precisado a darle publicidad a un hecho que de los propios términos del Registro no surge.

Contrario a lo que ocurriría al cancelar –como ocurre de ordinario– un derecho estimable o susceptible de ser justipreciado, el derecho cuya inscripción se interesa eliminar del Registro en este caso, por estar presentes en el mismo las condiciones que establecen los citados artículos del Código Civil y la Ley Hipotecaria, carece de valor para propósitos del Art. 1 de la Ley de Aranceles del Registro de la Propiedad, supra. Por lo tanto, resolvemos que, en esta excepcional circunstancia, los derechos a pagar corresponden al tipo mínimo que dispone el Arancel número dos, inciso (d), del Art. 1 de la Ley de Aranceles del Registro de la Propiedad, supra, y aclaramos que lo aquí resuelto, así como lo resuelto en S.B.Pharmco, no tiene aplicación a las

cancelaciones que de ordinario se realizan en el Registro de la Propiedad y que no están cobijadas por las distinciones que la propia ley reconoce.

Después de todo, ya hemos advertido que al computar el arancel sobre el valor de la finca o derecho, el Registrador debe orientar su criterio por la cifra que sea más representativa del verdadero valor de la finca o derecho. Lincoln American Corp. v. Registrador, 106 D.P.R. 781, 784 (1978). Debe, además, descartar el posible valor aparente por el valor real que satisface la razón y el entendimiento. Empire Life Ins. Co. v. Registrador, 105 D.P.R. 136, 142 (1976). Es decir, el método para determinar el valor sujeto a arancel acerca la operación registral a la realidad del verdadero valor del inmueble y excluye la ficción que representan los valores irrisorios. Aponte Parés v. Registrador, 106 D.P.R. 176, 178 (1977).

IV.

Por los fundamentos antes expuestos, concluimos que erró el Registrador de la Propiedad de Puerto Rico, Sección I de Carolina, al imponerle a la parte promovente la totalidad del pago de derechos arancelarios a tenor con el inciso (c) del arancel número dos del Art. I de la Ley de Aranceles del Registro de la Propiedad, supra. Procederá, no obstante, el arancel correspondiente de cuatro dólares ($4.00), en atención a lo aquí resuelto.

Se dictará sentencia de conformidad.


JOSÉ A. ANDRÉU GARCÍA
Juez Presidente


EN EL TRIBUNAL SUPREMO DE PUERTO RICO


ESJ Towers, Inc.


Recurrente

v.              RG-97-2      Recurso
                             Gubernativo

Honorable Demetrio Torre Rada
Registrador de la Propiedad,
Sección Primera de Carolina


      Recurrido




                    SENTENCIA


      San Juan, Puerto Rico a 15 de febrero de 2000


      Por los fundamentos expuestos en la Opinión que
antecede, la cual se hace formar parte integrante de la
presente, se dicta sentencia modificando la calificación
recurrida a los efectos de que el Registrador de la
Propiedad proceda a cobrar el arancel correspondiente de
cuatro dólares ($4.00), a tenor con lo aquí expuesto.

      Lo pronunció y manda el Tribunal y certifica la
Secretaria del Tribunal Supremo.  El Juez Asociado señor
Fuster Berlingeri disiente sin opinión escrita.



                    Isabel Llompart Zeno
                 Secretaria del Tribunal Supremo