ARTURO BALDRICH COLÓN, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA, recurrido.

*Número:* 1382    *Resuelto:* 17 de septiembre de 1962

---

*Víctor M. Pons,* abogado del recurrente. El Registrador recurrido no compareció.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Doña Carmen Joglar Vázquez era dueña de una finca rústica radicada en el término municipal de Cayey. La había adquirido, según el Registro, "por título de adjudicación de herencia intestada." El día 30 de agosto de 1917, estando casada con Clodomiro Colón, la vendió a don Antonio Ramírez Muñoz por el precio de $6,000, cuyo pago se aplazó por cinco años, obligándose el comprador a satisfacer interés sobre esa cantidad al tipo del uno por ciento mensual. Por el mismo documento de venta, Ramírez Muñoz, "para garantizar la suma de seis mil dollars, importe del precio de esta finca, y sus intereses al uno por ciento mensual pagaderos por mensualidades vencidas a razón de sesenta dollars cada mensualidad, constituyó hipoteca voluntaria sobre esta finca a favor de Doña Carmen Joglar y Váz-

quez . . .", según ello resultaba de la inscripción cuarta de dicha finca.

El 9 de mayo de 1927, la acreedora hipotecaria doña Carmen Joglar Vázquez, entonces "de estado viuda de Colón", otorgó una escritura pública mediante la cual, según consta de la inscripción 14ª de dicha finca, "confiesa haber recibido con anterioridad al acto del otorgamiento . . . los seis mil dólares de la relacionada hipoteca con sus intereses al tipo señalado y en tal virtud otorga la más solemne carta de pago y consiente en la cancelación total del mencionado gravamen el cual pesaba íntegramente sobre la finca de este número y consiente así mismo que tal cancelación de hipoteca se practique en este Registro." En esa inscripción, de fecha 1 de mayo de 1927, hizo constar el registrador:

"En su virtud y observándose que la hipoteca constituida en este caso *era de carácter privativo de la acreedora señora Joglar y Vázquez,* pero devengaba intereses a razón de sesenta dólares mensuales por un período de cinco años, los cuales son bienes gananciales pertenecientes a la sociedad existente entre la propia señora Joglar y su esposo don Clodomiro Colón y Ramos, habiéndose hecho extensiva la hipoteca de una manera expresa a los intereses devengados durante su vigencia, se inscribe la cancelación en cuanto al capital del crédito hipotecario *y se deniega en lo que respecta a lo que garantiza para intereses por no prestar su consentimiento para la cancelación los herederos legítimos del finado don Clodomiro Colón Ramos, esposo de la acreedora cancelante doña Carmen Joglar y Vázquez y* tomada en su lugar anotación preventiva por el término legal a favor del deudor solvente. . . ." —Énfasis suplido.

Contra esa negativa no se estableció recurso alguno. La finca fue objeto de posteriores trasmisiones. En 1941 pertenecía a varias personas. En ese mismo año la adquirió de ellas el recurrente Arturo Baldrich Colón. Al inscribirse a su favor se hizo constar: "Se halla gravada con los intereses de la hipoteca que consta de la inscripción cuarta . . ." De la certificación del registrador recurrido unida al recurso resulta que:

". . . de las constancias registrales no aparece que al adquirir la finca don Arturo Baldrich se hizo responsable expresamente del pago del principal o intereses de la hipoteca constituida por la escritura . . . de treinta y uno de agosto de mil novecientos diez y siete, que es la hipoteca que motivó la inscripción cuarta."

El 27 de agosto de 1942 y al margen de la referida inscripción cuarta, asiento motivado por la escritura de hipoteca del 1917, se anotó una demanda interpuesta ante la Corte de Distrito de Guayama, por la sucesión de Clodomiro Colón Ramos contra Arturo Baldrich, en la cual se solicitaba sentencia contra éste por "la suma de $1,410.00 de principal, más los intereses sobre dicha suma al 6 por ciento anual desde agosto 2 de 1921 hasta que dicha suma sea satisfecha . . . y en todo caso se disponga en la sentencia que la finca de este número sea vendida en subasta pública para que con su producto se pague a los demandantes el importe de su crédito hipotecario." El 28 de junio de 1944 recayó sentencia en esa acción declarando sin lugar la demanda. Firme esa sentencia, a virtud de un mandamiento librado por el secretario de esa corte, quedó totalmente cancelada dicha anotación de aviso de demanda el 30 de noviembre de 1944.

En 8 de enero de 1960—transcurridos para esa fecha 37 años del vencimiento del crédito hipotecario privativo de doña Carmen Joglar Vázquez y 32 años de la fecha de su cancelación total autorizada por ella—don Arturo Baldrich Colón como dueño y poseedor de la finca según el Registro, solicitó del Registrador de la Propiedad que procediera a cancelar "la hipoteca relacionada . . . en cuanto la misma garantiza los intereses del crédito."

El 31 de marzo de 1960 el Registrador denegó la cancelación por nota que dice:

"DENEGADA la cancelación a que se contrae este documento por observarse que si bien el principal del crédito hipotecario quedó extinguido por pago en 29 [sic] de mayo de 1927, su

cancelación fue denegada en cuanto a los intereses en 31 de mayo de dicho año; que la acción para el cobro de dichos intereses es la acción hipotecaria que prescribe a los veinte años cuyo plazo no ha expirado habiendo quedado interrumpida dicha prescripción en veinte y siete de agosto de mil novecientos cuarenta y dos al anotarse demanda en cobro de dichos intereses sin que hayan transcurrido veinte años desde dicha interrupción en dicha fecha y si bien la demanda reclamándolos fue desestimada y por su consecuencia cancelada su anotación por mandamiento judicial, dicha desestimación y cancelación de anotación de demanda no afectó a la interrupción causada; que si bien el peticionario don Arturo Baldrich es tercero con arreglo a la ley hipotecaria y en especial a los fines del artículo 114 de la misma, es lo cierto que cuando el señor Baldrich adquirió la finca descrita en el documento constaba del Registro la denegatoria de cancelación de los intereses de cuya cancelación se trata y por tanto la vigencia de la hipoteca en cuanto a dichos réditos en la cuantía o extensión que dicho artículo 114 (hipoteca especial) determina, siendo responsable de su pago, sin que en nada afecte en contrario el hecho de que los acreedores hipotecarios no solicitaran la ampliación por los intereses con arreglo al artículo 115 hipotecario por ser innecesario en el presente caso; habiéndose tomado en su lugar anotación preventiva por el término legal de 120 días a favor de don Arturo Baldrich Colón al folio 136 del tomo 100 de Cayey, finca número 1364 septuplicado, anotación F." ▮

Contra esa negativa interpuso en tiempo el interesado el recurso de ley. En su alegato nos pide su revocación y que ordenemos al registrador recurrido que practique la cancelación de la hipoteca en cuanto a los intereses cubiertos y protegidos por la misma. El registrador no ha presentado alegato alguno en defensa de su nota denegatoria.(1)

---

(1) El recurrente le notificó su alegato el 6 de mayo de 1960. En 16 de mayo el registrador recurrido pidió una primera prórroga para presentarlo y le fue concedida hasta el 27 de ese mes. No lo presentó dentro de esa primera prórroga. El 1ro. de junio siguiente, haciendo constar que "tiene interés en consignar sus razones en defensa de su nota por considerar que el caso lo amerita y que su resolución resolverá una cuestión hasta cierto extremo nueva" y que tenía "notas y apuntes con que confeccionar su escrito", solicitó "una prórroga final y definitiva" hasta el 27 de junio. Se le amplió el término hasta el 15 de ese mes.

Consideramos claramente errónea la negativa del registrador recurrido a cancelar definitivamente el gravamen hipotecario, en lo que respecta a los intereses.

Admitamos, de momento, que la negativa del registrador a cancelarlo totalmente en el año 1927 fue correcta. Tal negativa se limitó " . . . en lo que respecta a lo que garantiza para intereses por no prestar su consentimiento para la cancelación los herederos legítimos del finado don Clodomiro Colón y Ramos, esposo de la acreedora cancelante . . ." ■

Desde la muerte del esposo, posiblemente ocurrida en el año 1921, (²) el crédito hipotecario había dejado de producir intereses para la sociedad conyugal. Para todo el mundo a partir del 9 de mayo de 1927—fecha en que doña Carmen cancela totalmente la hipoteca que le correspondía privati-

---

Dentro de esa segunda prórroga tampoco lo presentó. El 16 de junio, por telegrama, pidió una tercera prórroga "hasta fines de mes" para "terminar alegato." Se le volvió a ampliar el término hasta el 27 de junio. Tampoco presentó su alegato dentro de esa última prórroga. Desde la misma han transcurrido dos años.

En su nota el registrador no cita precepto de ley, jurisprudencia o doctrina, en apoyo de su negativa a cancelar. Desde el 1914 estamos insistiendo en la conveniencia de que en estos recursos los registradores informen siempre con cierta amplitud sobre los motivos de sus notas y citen las autoridades que les han servido de base, a fin de poder decidir las cuestiones envueltas con la confianza de haber oído el pro y el contra de cada contención y en su consecuencia con mayor seguridad de acierto. *Álvarez v. Registrador,* 21 D.P.R. 487, 488 (1914) ; *Amy v. Registrador,* 21 D.P.R. 123, 125 (1914). De nuevo insistimos en que debe seguirse la línea de conducta marcada en estos casos. Se trata del cumplimiento de un deber legal impuesto por la ley de 1 de marzo de 1902, sobre recursos gubernativos, la que en su Sección 2 dispone que ". . . el registrador, el interesado o su abogado, harán por escrito al tribunal las alegaciones pertinentes a su derecho."

Si el registrador recurrido tenía "notas y apuntes con que confeccionar su escrito" y que necesitaba el tiempo adicional que se le concedió para "terminar alegato", y ha dejado pasar más de dos años sin presentarlo, sin ofrecer excusa buena para justificar el incumplimiento de un serio deber, merece nuestra más vigorosa censura.

(²) Del texto de la anotación de la demanda en el Registro se infiere que don Clodomiro había fallecido por el mes de agosto de 1921, porque sus herederos solamente le reclamaron en 1942 al señor Baldrich la mitad de los intereses, capitalizados, del crédito devengados desde el 31 de agosto de 1917 hasta el 2 de agosto de 1921, ascendente esa mitad a $1,410.00.

vamente, por haber ella "recibido . . . los seis mil dólares de la relacionada hipoteca con sus intereses." Pero, aceptando también que al momento de cancelarse existía su esposo y que el consentimiento de éste hubiera sido necesario para la validez de la cancelación de la hipoteca en tanto ésta garantizaba el pago de los intereses gananciales, tales intereses en cuanto a terceros adquirentes, no podían ser otros que los señalados por el Art. 114 de la Ley Hipotecaria,([3]) es decir, los de los dos últimos años transcurridos (del 31 de agosto de 1924 al 31 de agosto de 1926) y la parte vencida de la anualidad corriente—desde el 1 de setiembre de 1926 hasta el 9 de mayo de 1927. ■

Desde esta última fecha hasta el 8 de enero de 1960, día en que Baldrich Colón, como dueño de la finca, solicitó del registrador la cancelación definitiva de la hipoteca en lo que a dichos intereses se relacionaba, había transcurrido un período ininterrumpido de 32 años y 8 meses. Sin embargo, dicho registrador se negó a cancelar porque la acción hipotecaria para cobrar esos intereses no estaba prescrita "habiendo quedado interrumpida dicha prescripción en veinte y siete de agosto de mil novecientos cuarenta y dos al anotarse demanda en cobro de dichos intereses sin que hayan transcurrido veinte años desde dicha interrupción en dicha fecha."

Nunca hubo interrupción alguna del período prescriptivo para ejercitar la acción hipotecaria para el cobro de aquellos dos últimos años transcurridos y la parte vencida de la anualidad corriente, contra terceros hipotecarios, de admitirse, desde luego, que subsistió tal acción hipotecaria después de haber la acreedora cancelado la garantía hipotecaria, en forma total y definitiva, tanto en relación a su cuantía principal de $6,000 como a todos los intereses devengados hasta entonces.

---

([3]) Dice este Artículo 114 de la Ley Hipotecaria:

"La hipoteca constituida a favor de un crédito que devengue interés, no asegurará con perjuicio de tercero, además del capital, sino los intereses de los dos últimos años transcurridos y la parte vencida de la anualidad corriente."

La demanda instada en agosto de 1942 por los herederos del finado esposo de la acreedora hipotecaria contra el señor Baldrich Colón, que se anotó en el registro, era una en que se reclamaba el pago de $1,410.00 a que ascendía la mitad de los intereses del crédito, capitalizados hasta el 2 de agosto de 1921, (4) es decir, de un 50 por ciento de los devengados desde que el crédito fue constituido en 31 de agosto de 1917, hasta aquel día 2 de agosto de 1921, fecha, en que, como hemos dicho, creemos que falleció el esposo de la acreedora. Se reclamaron también "los intereses sobre dicha suma ($1,410.00) al 6 por ciento anual desde agosto 2 de 1921 hasta que dicha suma sea satisfecha."

En forma alguna allí se reclamó el pago de los intereses del crédito hipotecario que se devengaron entre el 31 de agosto de 1924 y el 9 de mayo de 1927, o sean, los correspondientes a los dos últimos años y a la parte vencida de la anualidad corriente.

No habiéndose interrumpido, de modo alguno, el período comprendido entre el 9 de mayo de 1927 y el 8 de enero de 1960, procedía claramente la cancelación definitiva del gravamen hipotecario respecto a los intereses del mismo y el registrador recurrido debió haberla cancelado al solicitárselo el señor Baldrich Colón como dueño del inmueble afectado por el gravamen; de conformidad con lo dispuesto en el párrafo último del Art. 388-B de la vigente Ley Hipotecaria (30 L.P.R.A. 704) que dice así:

"Transcurrido un año desde la vigencia de esta Ley [se refiere a la Ley Núm. 12, aprobada el 29 de agosto de 1923] los registradores, a instancia de las personas interesadas ya indicadas, procederán a la cancelación de las hipotecas referidas en esta sección [gravámenes hipotecarios que tengan veinte (20) años de vencidos, o de constituidos si no tuvieren

---

(4) No es posible pensar que dicha suma de $1,410.00 reclamada por los herederos del esposo, que aparentemente no lo eran de la esposa, formara parte del capital de la hipoteca, que era, en su totalidad, un crédito privativo de doña Carmen.

vencimiento] sin necesidad de notificación alguna, si no se hubiere acreditado en el registro la interposición de la demanda en cobro de la misma o la de su subsistencia de tales gravámenes." ■

Como dijimos en *Pagán* v. *Registrador*, 71 D.P.R. 480, 483 (1950), el objetivo perseguido por el citado Art. 388-B es eliminar del registro aquellos gravámenes que, por el tiempo transcurrido desde su constitución, debe presumirse que en realidad no existen. ■

Tanto el Art. 134 de la Ley Hipotecaria como el 1864 del Código Civil disponen que la acción hipotecaria prescribirá a los veinte años, contados desde que pueda ejercitarse con arreglo al título inscrito. El acreedor hipotecario está obligado a conocer la ley y sabe, por lo tanto, que si no es diligente, en su día, podrá el deudor pedir al registrador que cancele la inscripción del gravamen ya extinguido. *Soto* v. *Registrador*, 51 D.P.R. 236, 239 (1937).

Como se comenta en el tomo III, pág. 623 de la Nueva Enciclopedia Jurídica Española, las cancelaciones facilitan que el contenido del Registro se adapte a la verdadera realidad, que se busque en todo momento la concordancia adecuada evitando en lo posible que se pregone la subsistencia de situaciones jurídicas extinguidas.

Nuestros estatutos tienden hacia una política legislativa definida respecto a la rápida cancelación de asientos en los registros sin contenido jurídico, que aparentan situaciones de gravámenes que en la realidad no existen, y conforme a ellos se ha creado[5] en el registro una manera sumaria para cancelarlos, como expresamos en *Pinto* v. *Registrador*, 50 D.P.R. 662 (1936) y *Olivero* v. *Registrador*, 50 D.P.R. 666 (1936). ■

---

[5] Además de los Arts. 347 y siguientes de la Ley Hipotecaria y sus concordantes de su Reglamento sobre liberación de gravámenes, véanse: La Ley Núm. 12 de 29 de agosto de 1923; la Núm. 12 de 25 de junio de 1924; las Núms. 18, 19 y 20 de 9 de julio de 1937; la Núm. 106 de 12 de mayo de 1937; la Núm. 20 de 26 de abril de 1943 y la Núm. 14 de 7 de abril de 1945; y "Lecciones de Derecho Hipotecario", Tomo 1, págs. 334 a 344, del maestro Muñoz Morales.

No se debe ignorar esa política legislativa. La cancelación de una hipoteca prescrita, además de extinguir su asiento registral, extingue el derecho real de hipoteca. La doctrina moderna considera que la cancelación es un derecho del deudor. Martínez, Escobar, *"La Hipoteca"*, pág. 247.

Puede ser que el término "vía crucis registral" cualifique como apreciación adecuada del conjunto de experiencias sufridas indebidamente por terceros en torno a la cancelación definitiva del gravamen hipotecario constituido en 1917, pagado totalmente en 1927 y vigente aun en 1962, respecto a los intereses.

El primer término, consideramos que la escritura de cancelación total otorgada por la acreedora hipotecaria doña Carmen Joglar Vázquez, el 9 de mayo de 1927, era suficiente en derecho para producir registralmente la cancelación total y definitiva del crédito hipotecario tanto respecto al capital como a los intereses del mismo, y que la negativa del registrador a cancelarlo respecto a sus intereses fue errónea. En el presente recurso no podemos ordenar nada respecto a esa negativa, porque los interesados la consintieron al no establecer en el año 1927 recurso gubernativo contra la misma. ■

Fue errónea, decimos, porque doña Carmen, como dueña privativa del derecho real hipotecario inscrito, tenía la capacidad jurídica necesaria para cancelarlo en toda su extensión y no necesitaba del consentimiento de los herederos legítimos de su finado esposo para así cancelarla. Veamos.

Del registro aparecía que a ella le correspondía privativamente el crédito. Tenía el derecho exclusivo de su libre administración y disposición. La cobranza de sus intereses y la extensión de recibos eran facultades administrativas particulares de ella.[6] En el contrato de venta de su finca

---

[6] Cf. *Veve et al.* v. *Fajardo S. G. Association*, 18 D.P.R. 282, 291 (1912); Arts. 92 y 93, Código Civil.

privativa el comprador "se comprometió a pagar a la vendedora" el precio de seis mil dólares y sus intereses al uno por ciento mensual, y para su garantía "constituye hipoteca voluntaria sobre esta finca a favor de doña Carmen Joglar y Vázquez." ■

En las obligaciones de dar, el pago deberá hacerse "a la persona en cuyo favor estuviese constituida la obligación, o a otra autorizada para recibirlo en su nombre", y cuando se hace de buena fe al que estuviere en posesión del crédito —doña Carmen siempre lo estuvo, según el registro— liberará al deudor. Arts. 1116 y 1118, Código Civil.

La Ley Hipotecaria, en su Art. 82, para la cancelación de inscripciones hechas en virtud de escritura pública, solamente requiere que "exprese su consentimiento para la cancelación *la persona a cuyo favor se hubiese hecho la inscripción* . . . o sus causahabientes o representantes legítimos." Ya hemos visto que el titular del derecho real de hipoteca, según el registro, lo era doña Carmen, la acreedora cancelante.

Se considerará extinguido el derecho real inscrito, entre otros casos, "cuando deje también de existir completamente el derecho real inscrito, bien por disposición de la ley, . . . o bien por efecto natural del contrato que diere causa a la inscripción, como se verifica en la hipoteca cuando el deudor paga su deuda."—Art. 132, caso segundo, Reglamento Hipotecario. ■

Respecto a terceros la cancelación total otorgada por doña Carmen, como titular del derecho real inscrito, extinguió definitivamente la garantía hipotecaria, tanto respecto al principal como a los intereses protegidos, ya que en esa cancelación no concurren ninguna de las causas de nulidad enumeradas en el Art. 98 de la Ley Hipotecaria. En cuanto a las partes, —bajo la hipótesis de la existencia de la sociedad conyugal durante "los dos últimos años y la parte de la anualidad corriente"— ya el Art. 97 de la Ley Hipotecaria

dispone que "La cancelación de las inscripciones o anotaciones preventivas no extingue por su propia y exclusiva virtud, en cuanto a las partes, los derechos inscritos a que afecte." En esa forma el derecho de la sociedad ganancial para reclamar a doña Carmen los intereses percibidos o devengados durante el matrimonio del crédito hipotecario, quedó subsistente, aunque desprovisto, a partir de la cancelación, de la garantía hipotecaria. ▮

La participación eventual que pueda corresponder a la sociedad conyugal en los frutos, rentas o intereses de bienes privativos de sus miembros, no debe operar como limitación de la capacidad jurídica de éstos para "disponer libremente de sus respectivas propiedades particulares" ni para que la mujer pueda "por sí contratar . . . para lo que se refiera a . . . sus bienes propios . . . o administración que le confiere la ley . . . ", según disponen los Arts. 92 y 93 del Código Civil antes citados.

Aplicando en 1913 ese Art. 92, —que correspondía al Art. 160 del Código Civil de 1902, tal como había sido enmendado en 1904, —a una situación muy análoga a la del presente recurso, en el caso de *Arias et al.* v. *Registrador*, 19 D.P.R. 1177, 1179, resolvimos:

"De los antecedentes expuestos resulta que el Registrador de la Propiedad de Ponce inscribió el crédito hipotecario cuya cancelación motiva este recurso como bien propio de la esposa, e hizo constar además, las manifestaciones que el apoderado de ella hizo respecto a la procedencia del dinero y la de que éste no era ganancial, sino de su exclusiva pertenencia, por proceder de bienes que aportó a su matrimonio. Nos encontramos, pues, con una inscripción que atribuye la propiedad exclusiva de ese crédito hipotecario a la esposa, por lo que ni nosotros ni el registrador podemos prescindir de ese asiento y del concepto jurídico que en él se contiene con respecto a la propiedad de ese derecho real, mientras no haya sido anulado, según resolvimos en 14 de febrero de este año en el caso de la *Sucesión Fuster* v. *El Registrador de la Propiedad*

(pág 128). Por consiguiente, apareciendo del registro que tal crédito era propiedad exclusiva de la esposa que otorgó la escritura de cancelación a los deudores recurrentes, no necesitaba ella el consentimiento de su marido para cancelarlo, de acuerdo con el artículo 160 del Código Civil Revisado, tal como quedó enmendado en el año 1904 y el documento debió ser inscrito.

"La nota recurrida debe ser revocada por ese fundamento."

En segundo lugar encontramos la negativa del registrador, de fecha 15 de setiembre de 1944, a cancelar, la primera vez que se le solicitó, la anotación de la demanda de los herederos del esposo reclamando a Baldrich Colón el pago de los intereses devengados por el crédito desde el 31 de agosto de 1917 hasta el 2 de agosto de 1921. La anotación del aviso de demanda se había practicado el 27 de agosto de 1942. El 28 de junio de 1944 se dictó sentencia en el caso declarando sin lugar la demanda anotada. Firme esa sentencia, se solicitó del registrador la cancelación del aviso de demanda. Se negó el registrador a cancelarlo porque "no ha transcurrido el término de 4 años que señala el apartado (b) del Artículo 388-A de la Ley Hipotecaria para efectuar tales cancelaciones." Tuvo la parte que acudir al tribunal sentenciador para que éste ordenase la cancelación inmediata del aviso de la demanda para que el registro dejara de pregonar la pendencia de un litigio resuelto definitivamente por sentencia firme contra la parte a cuyo favor se anotó el aviso de demanda.

En tercer y último lugar nos topamos con una negativa a cancelar definitivamente la hipoteca en cuanto a sus intereses por la interrupción del período de 20 años que jamás fue interrumpido según ha quedado demostrado.

*Debe revocarse la nota del registrador recurrido y practicarse en su registro la cancelación definitiva solicitada por el recurrente.*