RG-97-1                                                        1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| S.B. PHARMCO PUERTO RICO, INC.<br>      Recurrente<br><br>      V.<br><br>EL REGISTRADOR DE LA PROPIEDAD DE GUAYAMA<br><br>      Recurrido | Recurso Gubernativo<br><br>99TSPR77 |

Número del Caso: RG-97-1

Abogados de la Parte Recurrente: Lic. César Vázquez Morales (Fiddler, González & Rodríguez)

Abogados de la Parte Recurrida: Hon. Francisco J. Rodríguez Juarbe Registrador de la Propiedad

Abogados de la Parte Interventora:

Registro de la Propiedad, Sección de Guayama

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 5/18/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

S.B. Pharmco Puerto Rico, Inc.

    Recurrentes

    v.                                RG-97-1      Recurso
                                              Gubernativo

El Registrador de la Propiedad
de Guayama

    Recurrido


Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO


San Juan, Puerto Rico, a 18 de mayo de 1999.

I

S. B. Pharmco Puerto Rico, Inc. acude ante nos mediante Recurso Gubernativo. Nos solicita que revisemos la determinación del Honorable Registrador Francisco J. Rodríguez Juarbe, actuando como tal en el Registro de la Propiedad de Puerto Rico, Sección de Guayama, denegando la inscripción de una Instancia de Cancelación de un Contrato de Arrendamiento vencido.

En el presente caso, la parte recurrente es propietaria en pleno dominio de la finca número 13,478 inscrita al folio 109 del tomo 380 de Guayama, Registro de la Propiedad de Puerto Rico, Sección de Guayama. El referido inmueble está

gravado con un Contrato de Arrendamiento a favor de ICI Pharmaceuticals PR, Inc. En dicho contrato las partes pactaron un canon mensual de doscientos mil dólares ($200,000) durante un plazo de cinco años con opción a dos años de prórroga contados a partir del otorgamiento de la escritura. El referido contrato fue constituído mediante escritura pública número 12, otorgada en San Juan, Puerto Rico, el 26 de noviembre de 1986 ante el notario Esteban F. Bird, inscrita al folio 44 del tomo 364 de Guayama, inscripción tercera.

A tenor con los propios términos del contrato, el arrendamiento expiró en su totalidad el 26 de noviembre de 1993. Es por ello que el recurrente procedió a presentar una Instancia de Cancelación en virtud del Artículo 134 de la vigente Ley Hipotecaria, según enmendada por la Ley 143 del 14 de junio de 1980, 30 L.P.R.A. Sec. 2458. El Honorable Registrador le envió al recurrente una notificación de defecto indicándole que faltaba un comprobante por la cantidad de $47,946.00 para completar los derechos de inscripción.

Oportunamente, la parte recurrente presentó Escrito de Recalificación conforme al Artículo 70 de la Ley Hipotecaria, 30 L.P.R.A. Sec. 2273. Alegó que por haberse extinguido el Contrato de Arrendamiento debe ser relevado de cumplir con el pago y cancelación de aranceles ya que sólo pagan derechos de cancelación los *derechos* susceptibles de aprovechamiento.

Ante estos señalamientos, el 26 de agosto de 1997, el Honorable Registrador denegó la inscripción de la Instancia de Cancelación. Además, tomó anotación preventiva por el término de sesenta (60) días por no haberse consignado la cantidad de $47,946.00 para completar los derechos para la cancelación del arrendamiento.

Inconforme, S. B. Pharmco Puerto Rico, Inc. recurre ante nos mediante Recurso Gubernativo. Nos plantea los siguientes señalamientos de error:

> Erró el Honorable Registrador al denegar la inscripción de la Instancia de Cancelación de un Contrato de Arrendamiento extinguido como "derecho" para los fines de la Ley de Aranceles de Puerto Rico y exigir el pago de aranceles.

> Erró el Honorable Registrador al no incluir en la notificación de defecto, legajo de notificación núm. 576, fechado 24 de junio de 1997, los fundamentos legales que apoyen el pago de aranceles.

Nos solicita que declaremos con lugar el presente recurso y que revoquemos la determinación y calificación del Registrador de la Propiedad de Guayama. Igualmente nos solicita que le ordenemos al Honorable Registrador que inscriba la Instancia de Cancelación del Contrato de Arrendamiento sin necesidad de incurrir en el pago de aranceles por la cantidad de $47,946.00. Examinados los alegatos de las partes, y a la luz de los hechos y principios aplicables, modificamos la calificación recurrida.

II

El Artículo 134 de la Ley Hipotecaria de Puerto Rico, 30 L.P.R.A. Sec. 2458, regula el procedimiento para cancelar un asiento que contiene un derecho de arrendamiento inscrito y extinguido por sus propios términos. A esos efectos dispone lo siguiente:

> Cuando por declaración de ley o por resultar del título que produjo el asiento, quedare extinguido el derecho contenido en una inscripción, anotación preventiva o nota, se cancelará el respectivo asiento a instancia de parte interesada, sin exigirse los requisitos fijados en la sec. 2456[1] de este título. Sin embargo, las

---

[1] El Artículo 132 de la Ley Hipotecaria, 30 L.P.R.A. Sec. 2456, establece los requisitos para la cancelación de inscripciones y anotaciones a virtud de escritura o documento auténtico:

> "Las inscripciones, anotaciones preventivas y notas hechas en virtud de escritura o documento

inscripciones de contratos de arrendamiento, o subarrendamiento, así como de cualquier otro derecho, que tuvieren pacto o condición de prórroga, debidamente hecho constar en el asiento correspondiente, no serán canceladas hasta que expire el plazo de dicha prórroga.

De igual forma, la sección 127.2 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, Núm. 2674 de 9 de julio de 1980, según enmendado (en adelante el Reglamento Hipotecario), en su parte pertinente, dispone en relación a los títulos necesarios para la cancelación de un asiento cuando del mismo surge la extinción del derecho inscrito que "[l]a solicitud de cancelación de un asiento será título suficiente para cancelarlo si resultare del propio asiento, o de otro documento fehaciente que el derecho asegurado ha caducado o se ha extinguido"[2].

Este tipo de cancelaciones son denominadas *cancelaciones automáticas* o por *ministerio iuris* y pueden realizarse sin necesidad de impetrar el consentimiento del titular registral del derecho inscrito debido a que del propio asiento surge la extinción del derecho.

> Proceden cuando de la propia escritura resulte que el derecho inscrito ha caducado o se ha extinguido. Estas cancelaciones tienen lugar en los casos de caducidad pura de los derechos inscritos, por tener éstos una duración predeterminada debido a la concurrencia de un plazo cierto. Por ejemplo, en el arrendamiento inscrito sujeto al Código civil y concertado por

auténtico, <u>se cancelarán mediante otra escritura o documento de la misma naturaleza</u>, en que exprese su consentimiento el titular a cuyo favor se hubiese hecho el asiento, o su causahabiente, o legítimo representante. También se cancelarán en virtud de resolución judicial firme, debidamente testimoniada o inserta en un mandamiento judicial, según los casos. Lo establecido en esta sección es sin perjuicio de las disposiciones especiales que sobre determinadas cancelaciones ordena este subtítulo." (Subrayado nuestro).

Por disposición expresa del legislador, se exime del cumplimiento con estos requisitos para cancelar un asiento registral, cuando por declaración de ley, o por resultar del título que produjo el asiento, queda extinguido el derecho inscrito.

[2] Sección 127.2 del Reglamento Hipotecario.

el tiempo determinado. Véase Roca Sastre,
*Derecho Hipotecario,* 8va. ed., Barcelona, Bosch,
1995, t. III, pág. 175.

La cancelación por *ministerio iuris* es propia de derechos nacidos con una existencia de duración predeterminada y los cuales se extinguen por el mero transcurso del tiempo señalado. No obstante, este principio no aplica cuando la subsistencia de los derechos sea dudosa, controvertible o dependa del cumplimiento de obligaciones puesto que requiere que conste, de modo fehaciente, que el derecho inscrito ha caducado o extinguido. Buenaventura Camy Sánchez-Cañete, *Comentarios a la Legislación Hipotecaria*, 3ra. ed., Pamplona, Editorial Aranzadi, 1983, vol. VI, pág. 356.

Según Roca Sastre, no fue hasta la publicación del Real Decreto de 20 de septiembre de 1880 que se recogió en el ordenamiento registral inmobiliario español la cancelación *sin* el consentimiento del titular registral. Añade, que la Ley Hipotecaria vigente en España ha sido la que primeramente ha destinado un precepto suyo concreto relativo a este tipo cancelatorio. No obstante, a partir del Real Decreto de 1880, la doctrina de la Dirección General de los Registros varió para aceptar plenamente el criterio de cancelación automática. Roca Sastre, *op. cit.,* t. III, págs. 164-168.[3]

No empece a lo anterior, existen casos excepcionales, especialmente previstos, en los cuales el Registrador puede practicar *de oficio* los correspondientes asientos.[4]

----

[3] La cancelación automática o *de iure* es distinguible y no debe confundirse con la cancelación por caducidad del *asiento* del Registro. La cancelación *de iure* se refiere al contenido de los asientos registrales, mientras que la cancelación por caducidad del asiento se refiere a la publicidad registral. *Id.*, pág. 163.

[4] Las cancelaciones de oficio son aquellas que el Registrador debe practicar en ausencia de instancia de

...continúa

...continuación
parte interesada o de mandamiento judicial. Frecuentemente se practican en los casos de *caducidad* de asientos. Roca Sastre, *op.*

Roca Sastre señala que "el Registrador de la Propiedad, actuando a modo de Juez territorial, apreciará o calificará si se ha producido la caducidad o extinción automática del derecho registrado, por cuanto con los datos obrantes en el Registro, complementados en general con los documentos adecuados a cada supuesto específico, cuenta con los elementos de juicio necesarios para determinar si tal caducidad o extinción automática ha tenido lugar en la realidad jurídica, a fin de certificarlo en los libros mediante la correspondiente cancelación o nueva inscripción."

Conforme al Artículo 130 de nuestra Ley Hipotecaria, 30 L.P.R.A. Sec. 2454, la cancelación de un asiento del Registro puede ser total o parcial. Entre otras circunstancias, procede la cancelación total cuando se extinga por completo el derecho registrado. El propósito de cancelar un derecho extinguido es eliminar de los registros de  la propiedad aquellos gravámenes que, por el

---

*cit.,* pág. 188. Sobre este particular, el segundo párrafo del Artículo 134 de la Ley Hipotecaria, *supra,* dispone:

"Serán canceladas de oficio las inscripciones de hipoteca, cuando de las sucesivas inscripciones de la finca resulte que ésta o el derecho sobre el que  se constituyó la hipoteca fue ejecutado o vendido en pública subasta, a favor del acreedor o de otra persona; y también cuando de sucesivas inscripciones aparezca que la finca o derecho hipotecado fue transferido, por cualquier título, a favor del acreedor según el Registro."

tiempo transcurrido desde su constitución, debe presumirse que en realidad no existen. Ciertamente, un derecho inscrito podría figurar como subsistente en el Registro de la Propiedad a pesar de haberse extinguido en la realidad. La finalidad de las cancelaciones es ajustar el contenido del Registro a la realidad jurídica extraregistral, evitando así la subsistencia de situaciones jurídicas extinguidas. *Baldrich Colón v. Registrador*, 86 D.P.R. 42, 51 (1962).

Ahora bien, la Sec. 139.1 del Reglamento Hipotecario le confiere discreción al Registrador para determinar cuál va a ser el mecanismo utilizado para la cancelación de un asiento registral. Según dispone dicha sección: "[l]a cancelación podrá hacerse, a juicio del Registrador y según la sencillez o complejidad del caso lo aconseje, **mediante un asiento principal o por nota marginal**". (Enfasis nuestro.)

Las notas marginales utilizadas para efectuar una cancelación son las llamadas notas marginales sucedáneas de otros asientos. Estas han sido definidas como aquellas que tienen una función semejante o equivalente a la de los asientos de inscripción, anotación preventiva o **cancelación**. Roca Sastre, *op. cit.,* t. IV, pág. 348 (Enfasis nuestro.)

Debido a esta similitud con los asientos principales, las notas marginales sucedáneas suelen tener igual valor y la misma característica de surtir los efectos correspondientes a tales asientos de inscripción, anotación preventiva o cancelación. *Id.*

Por último, en cuanto a los aranceles que deben ser satisfechos al momento de realizar una cancelación, ya sea mediante nota marginal o mediante asiento de cancelación, el Artículo 1 de la Ley de Aranceles del Registro de la Propiedad, 30 L.P.R.A. Sec. 1767(a), fija los derechos que se han de pagar por las inscripciones, anotaciones, cancelaciones o liberaciones

en el Registro de la Propiedad. Particularmente, el arancel *número dos* dispone lo siguiente:

> Por la inscripción, anotación, cancelación, liberación, respecto a cada derecho en una finca, se pagarán los siguientes derechos:
>
> (a) Si la finca o derecho vale mil (1,000) dólares o menos, se pagará dos (2) dólares.
>
> (b) Cuando el valor de la finca o derecho exceda de mil (1,000) dólares se pagará dos (2) dólares por cada mil dólares o fracción de mil dólares del valor nominal de la finca hasta un valor máximo de veinticinco mil (25,000) dólares.
>
> (c) Cuando el valor de una finca o derecho exceda de veinticinco mil (25,000) dólares, se pagarán cincuenta (50) dólares por los primeros veinticinco mil (25,000) dólares y cuatro (4) dólares por cada mil (1,000) dólares o fracción de mil (1,000) dólares adicionales.
>
> (d) Por las notas marginales que no envuelvan cuantía se pagará cuatro (4) dólares por cada una.
>
> (e) Por liberaciones gratuitas se pagarán cuatro (4) dólares por cada finca.
>
> (f) Los derechos por la anotación de la reserva de prioridad de un contrato en gestación se regirán por el anterior inciso (a) o (b), pero limitados a un máximo de veinticinco (25) dólares.
>
> (g) Los derechos por la inscripción del contrato de opción de compra se regirán por el anterior inciso (a) o (b) sobre el monto del precio señalado para la compra, pero limitado a un máximo de veinticinco (25) dólares.

Como es sabido, el valor del arancel registral requerido para la inscripción o cancelación de cualquier asiento, ya sea principal o accesorio, queda establecido en virtud del valor de la finca o derecho a inscribirse o a cancelarse. *Correa Sánchez v. Registrador,* 113 D.P.R. 581, 590 (1983).

> [C]uando la nota marginal tenga por objeto un derecho o interés estimable, susceptible de así ser justipreciado-al momento de su presentación o cancelación- estamos ante una nota marginal que realmente envuelve cuantía. [...] La obligación del Registrador es exigir el pago del arancel correspondiente, siguiendo las normas aplicables en la ley. *Id*, págs. 591-92.

La operación registral que pretende cancelar un derecho inscrito, que por sus propios términos y según surge de la inscripción del mismo ya ha vencido, no puede envolver cuantía ni tiene por objeto un derecho o interés estimable. Como consecuencia, la inscripción de dicho asiento de cancelación sólo deberá satisfacer el tipo mínimo de cuatro dólares ($4.00) que contempla el Artículo 1 de la Ley de Aranceles, *supra.* El mecanismo específico que utilice el Registrador para llevar a cabo dicha operación registral, sea nota marginal o asiento principal, no altera esta conclusión. La interpretación y aplicación de la Ley Aranceles del Registro de la Propiedad, *supra,* no puede depender de la mecánica o modo empleado por el Registrador al efectuar la operación registral, sino que depende de la naturaleza, objeto y efectos de dicha operación. *Correa Sánchez v. Registrador, supra,* págs. 584-85.

III

En el presente caso, estamos ante un contrato de arrendamiento inscrito en el Registro de la Propiedad y vencido por sus propios términos. De la misma escritura pública inscrita se desprende que el referido derecho se extinguió en su totalidad el 26 de noviembre de 1993. Por consiguiente, para cancelar este derecho no es necesario cumplir con los requisitos dispuestos en el Artículo 132 de nuestra Ley Hipotecaria, *supra*. Por el contrario, para llevar a cabo este tipo de *cancelación automática* basta la propia escritura pública en cuya virtud se hizo la inscripción del contrato de arrendamiento ya que, al surgir la extinción del derecho inscrito, huelga pues la presentación de documentos fehacientes de tal hecho así como del consentimiento del arrendatario que contrató por un plazo cierto.

Por consiguiente, en aras de actualizar el contenido del Registro de la Propiedad la parte promovente, propietaria del inmueble gravado con el contrato de arrendamiento vencido, le

solicitó al Registrador de la Propiedad que cancelara la inscripción del referido contrato, transcurridos más de tres años después de su vencimiento, según surge de la propia inscripción registral, en virtud de lo dispuesto en el Art. 134 de la Ley Hipotecaria, *supra.*

La controversia surge cuando el recurrente presenta la instancia de cancelación de la inscripción del derecho de arrendamiento extinguido y el Registrador le notifica el defecto de que faltaba un comprobante por la cantidad de $47,946.00 en concepto de aranceles.[5]

Al así proceder, erró el Registrador de la Propiedad debido a que, contrario a lo que ocurre con la cancelación de un derecho que es capaz de ser justipreciado, el contrato de arrendamiento de marras ya era inexistente y carecía pues de un canon estimable susceptible de ser valorizado. Véase *Correa Sánchez v. Registrador, supra,* págs. 591-92. Por dicha razón concluimos que la operación registral que el Registrador efectúe para llevar a cabo la cancelación solicitada, pagará derechos por el tipo mínimo que dispone el Arancel número dos, inciso (d), del Art. 1 de la Ley de Aranceles del Registro de la Propiedad.

IV

Finalmente, nos toca dilucidar si erró el Registrador de la Propiedad al no incluir en la notificación de defecto los fundamentos legales en que se basó para imponerle al recurrente el pago de aranceles.

El Artículo 69 de la vigente Ley Hipotecaria, 30 L.P.R.A. Sec. 2272, dispone lo siguiente con respecto al contenido de la notificación de la calificación:

> Si el Registrador observare alguna falta en
> el documento exclusivamente conforme a la sec.

---

[5] Por el resultado alcanzado en este caso, no nos compete examinar la corrección del cómputo realizado por el Registrador en virtud del inciso (c) del Arancel Núm. 2, Art. 1 de la Ley Hipotecaria, *supra.*

2271 de este título, notificará su calificación por escrito siempre al notario autorizante, y al presentante si éste lo solicita en la minuta dentro de sesenta (60) días de la fecha de dicho asiento de presentación, bien por entrega personal o por correo, para que corrijan la falta durante el plazo de sesenta (60) días a partir de la fecha de notificación. Si se hiciere más de una notificación, se comenzará a contar el plazo desde la última hecha al notario.

La notificación deberá contener todos los motivos legales en que se basa la calificación. La notificación se hará constar por nota fechada en el asiento de presentación y al pie del documento notificado, firmando dicha nota el Registrador, cumplido lo cual quedará perfeccionada.

De no ser subsanado el defecto y expirado el plazo de sesenta (60) días, el Registrador extenderá nota de caducidad en el asiento de presentación y al pie del documento. Cuando los derechos pagados a la presentación del documento cuya notificación haya caducado no excediere de doscientos dólares ($200) el Registrador cancelará veinticinco dólares ($25); cuando los derechos pagados a la presentación excedieren de doscientos dólares ($200) el Registrador cancelará cincuenta dólares ($50). (Enfasis nuestro).

El Registrador deberá en lo posible señalar en la primera notificación todas las faltas que encuentre en los documentos presentados y las razones legales en que se apoye. No obstante, de ser necesario, podrá hacerse más de una notificación. En ese caso, deberá hacerse referencia a la primera notificación con expresión de las nuevas faltas encontradas en adición a las ya señaladas.

De igual forma, la Sección 81.2 de nuestro Reglamento Hipotecario establece que:

El Registrador deberá en lo posible señalar en la primera notificación todas las faltas que encuentre en los documentos presentados y las razones legales en que se apoye. No obstante, de ser necesario, podrá hacerse más de una notificación. En ese caso, deberá hacerse referencia a la primera notificación con expresión de las nuevas faltas encontradas en adición a las ya señaladas[...].(Enfasis suplido).

Por otro lado, hacemos referencia a la nota al calce que aparece en *Caguas Federal Savings v. Registrador,* 103 D.P.R. 620, 623 (1975), la cual establece lo siguiente: "Recalcamos una vez más que las notas de los Señores Registradores deben ser concisas pero claras y expresas de manera que las partes afectadas puedan

determinar con facilidad las objeciones señaladas. *Julio Godreau Co. v. Registrador*, 23 D.P.R. 65 (1915); *Torres v. Registrador*, 75 D.P.R. 128 (1953)".

El quinto párrafo del Artículo 77 de la Ley Hipotecaria[6], según enmendada el 14 de junio de 1980, dispone que el Registrador puede ser corregido disciplinariamente de no acumular en una misma calificación todos los motivos por los cuales denegó el asiento solicitado. *Rodríguez Morales v. Registrador*, Opinión de 29 de enero de 1997, 142 D.P.R. ___, 97 J.T.S. 12. Sin embargo, ni nuestro ordenamiento jurídico ni la jurisprudencia interpretativa le han impuesto expresamente a los Registradores de la Propiedad el deber de citar la disposición legal en la cual fundamentan su denegatoria. Es decir, no se ha establecido claramente cuál es el alcance de los referidos "motivos legales".

No obstante, en torno a los efectos derivados de la calificación registral, Roca Sastre nos comenta lo siguiente:

> Si la calificación del Registrador *es desfavorable* a la extensión del asiento solicitado, tanto en el caso de suspensión como en el de denegación, los efectos inmediatos derivados de la calificación registral serán los siguientes:
> El Registrador *debe manifestar o notificar* a los que pretenden la inscripción del título los *defectos*, subsanables o insubsanables, que a su juicio impiden la inscripción. Cuando el Registrador inscribe, no debe indicar los motivos o razones de ello, pero cuando deja de inscribir ha de manifestar a los interesados los defectos que atribuye al título y que obligan a suspender o a denegar su registración.
>
> En esta ocasión es cuando se pone de relieve el carácter simple y patriarcal de la función del

---

[6] 30 L.P.R.A. Sec. 2280:

> "...Es obligación del registrador incluir en la calificación todos los motivos por los cuales proceda la denegatoria del asiento solicitado. Si así no lo hubiere hecho y se presentare de nuevo el documento o se acordare su inscripción en el recurso gubernativo correspondiente, podrá alegar defectos no comprendidos en la calificación anterior; pero en tal supuesto podrá ser

**...continúa**

**...continuación**

> corregido disciplinariamente, si procediere, según las circunstancias del caso..."

> Registrador, instruyendo y hasta aconsejando a los
> interesados, más por vocación que por interés, la
> forma de salvar el título o de hacer frente a la
> situación jurídica. Roca Sastre, *op. cit.*, t. IV
> pág. 57. (Subrayado nuestro.)

Es necesario que los Registradores de la Propiedad citen el precepto legal que sostiene la denegatoria de que se trate. De tal forma los interesados pueden rectificar el error cometido o someter escrito de recalificación a sabiendas del fundamento legal por el cual denegaron su inscripción. Después de todo, la nota denegatoria no debe inducir a error. Tampoco debe provocar la indefensión de aquellos que de buena fe quieran impugnar la calificación del Registrador de la Propiedad.

A la luz de los principios expuestos, concluimos que en el presente caso, el Registrador de la Propiedad no cometió el error señalado. Veamos.

En la primera notificación de defectos el Registrador de la Propiedad señaló que denegaba la Instancia de Cancelación presentada por el promovente porque faltaba un comprobante de $47,946.00 para completar los derechos de inscripción. El Registrador debió citar la disposición que utilizó para llegar a ese cómputo; se colige del cómputo que obviamente estaba aplicando el Artículo 1 de la Ley de Aranceles, *supra.* Una vez recibido el Escrito de Recalificación, el Registrador de la Propiedad lo denegó por el mismo fundamento, pero esta vez citó el Artículo 1 de la citada ley. Por ende, cuando el recurrente comparece ante nos mediante Recurso Gubernativo ya ha sido notificado del fundamento legal por el cual fue denegada la cancelación que nos ocupa. Es por ello que concluimos que el Registrador no cometió el segundo error señalado.

No obstante, debemos recalcar que lo resuelto en este caso no pretende eximir a los Registradores de la Propiedad de señalar en la primera notificación los fundamentos legales en los cuales basan su calificación. Por el contrario, entendemos necesario que

desde la calificación inicial los Registradores le informen a los interesados los defectos atribuidos y los preceptos legales aplicables.

Por los fundamentos antes expuestos, concluimos que erró el Registrador de la Propiedad de Puerto Rico, Sección de Guayama, al imponerle a la parte promovente la totalidad del pago de derechos arancelarios a tenor con el inciso (c) del arancel número dos del Artículo 1 de la Ley de Aranceles del Registro de la Propiedad, *supra*. Este procederá a cobrar el arancel correspondiente de cuatro dólares $4.00, a tenor con lo aquí expuesto.

Se dictará sentencia de conformidad.

                        BALTASAR CORRADA DEL RIO
                        JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

S.B. Pharmco Puerto Rico, Inc.

    Recurrentes

    v.                                              Recurso
                            RG-97-1    Gubernativo

El Registrador de la Propiedad
de Guayama

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 18 de mayo de 1999.

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, concluimos que erró el Registrador de la Propiedad de Puerto Rico, Sección de Guayama, al imponerle a la parte promovente la totalidad del pago de derechos arancelarios a tenor con el inciso (c) del arancel número dos del artículo I de la Ley de Aranceles del Registro de la Propiedad, *supra*. Este procederá a cobrar el arancel correspondiente de cuatro dólares ($4.00), a tenor con lo aquí dispuesto.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlinger concurre sin opinión. El Juez Asociado señor Rebollo López disiente sin opinión. El Juez Asociado señor Negrón García inhibido.

                      Isabel Llompart Zeno
                Secretaria del Tribunal Supremo